# EXHIBIT A

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
------------------------------------------------------------X
SHANNON JONES, BRITTANY WILLIAMS,
AND BRYAN ROMAN,

                             Plaintiffs,

          -against-

THE CITY OF NEW YORK, COMMISSIONER
DERMOT SHEA, NEW YORK CITY POLICE
DEPARTMENT; CHIEF OF DEPARTMENT
TERENCE MONAHAN; INDIVIDUALLY AND AS
A POLICE OFFICER, LT. ROMAINE WILSON,
TAX #949804, DRUG ENFORCEMENT TASK
FORCE, INDIVIDUALLY AND AS A POLICE
OFFICER; ASSISTANT CHIEF KENNETH LEHR,
COMMANDER OF NYPD PATROL BOROUGH
BRONX, INDIVIDUALLY AND AS A POLICE
OFFICER; NYPD POLICE OFFICER LUKE
SPERANZA, SHIELD # 11812, 40TH PCT,
INDIVIDUALLY AND AS A POLICE OFFICER;
P.O NIAZUL HAQUE, TAX #943349, 40th PCT.,
INDIVIDUALLY AND AS A POLICE OFFICER;
DET. CHRISTOPHER P. BORIA, SRG #4,
SHIELD # 26858; INDIVIDUALLY AND AS A
POLICE OFFICER; DET PAUL ZAINO,
SHIELD #4702, NARCOTICS BOROUGH BRONX,
INDIVIDUALLY AND AS POLICE OFFICER;
POLICE OFFICER ARMANDO RIVAS, SHIELD
#2833, 44 PCT., INDIVIDUALLY AND AS A POLICE
OFFICER; and NYPD OFFICERS JOHN
AND JANE DOES # 1-40, INDIVIDUALLY AND AS
POLICE OFFICERS,

                          Defendants.
------------------------------------------------------------X

**SUMMONS WITH
VERIFIED COMPLAINT**

Index No.:
Dated Purchased:

Plaintiffs designate Bronx
County as the place of trial.
The basis of the venue is place
where the cause of action arose.

**JURY TRIAL DEMANDED**

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

To the above named Defendant(s):

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney with twenty (20) days after the service of this summons, exclusive of the day of service, (30) days after the service is complete, if the summons is not personally delivered to you within the State of New York; and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:          New York, New York
                This 1st day of September, 2021

                                        Jeffrey L. Emdin, Esq.,
                                        Attorney for the Plaintiffs
                                        330 West 38th Street Suite 302
                                        New York, New York 10018
                                        (212) 265-1350

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

**Defendants addresses:**

City of New York
c/o Office of the Corporation Counsel,
100 Church Street
New York, New York 10007

Commissioner Dermot Shea
1 Police Plaza
New York, New York 10038

The New York City Police Department
1 Police Plaza
New York, New York 10038

Terrence Monahan
Chief of Department
40 Oreco Terrace
Monroe, NY 10950

Lt. Romaine Wilson
Tax #949804
Drug Enforcement Task Force
99 10th Avenue
New York, NY 10011

Assistant Chief Kenneth Lehr
Commander of NYPD Patrol Borough Bronx
450 Cross Bronx Expressway
Bronx, NY 10457

P.O Luke Speranza
Shield #11812, 40th Pct.
257 Alexander Ave
Bronx, NY 10454

P.O Niazul Haque
Tax #943349, 40th Pct.
257 Alexander Ave
Bronx, NY 10454

Det. Christopher Boria
Srg #4, Shield #26858
135-58 Northern Blvd
Flushing, NY 11354

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

Det. Paul Zaino
Shield #4702
Narcotics Borough Bronx
500 Abbot Street
Bronx, NY 10470

P.O Armando Rivas
Shield #2833, 44th Pct.
2 E 169th Street
Bronx, NY 10452

4

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

SHANNON JONES, BRITTANY WILLIAMS, AND BRYAN
ROMAN,

Plaintiffs,

-against-

THE CITY OF NEW YORK, COMMISSIONER
DERMOT SHEA, NEW YORK CITY POLICE
DEPARTMENT; CHIEF OF DEPARTMENT
TERENCE MONAHAN; INDIVIDUALLY AND AS
A POLICE OFFICER, LT. ROMAINE WILSON,
TAX #949804, DRUG ENFORCEMENT TASK
FORCE, INDIVIDUALLY AND AS A POLICE
OFFICER; ASSISTANT CHIEF KENNETH LEHR,
COMMANDER OF NYPD PATROL BOROUGH
BRONX, INDIVIDUALLY AND AS A POLICE
OFFICER; NYPD POLICE OFFICER LUKE
SPERANZA, SHIELD # 11812, 40TH PCT,
INDIVIDUALLY AND AS A POLICE OFFICER;
P.O NIAZUL HAQUE, TAX #943349, 40th PCT.,
INDIVIDUALLY AND AS A POLICE OFFICER;
DET. CHRISTOPHER P. BORIA, SRG #4,
SHIELD # 26858; INDIVIDUALLY AND AS A
POLICE OFFICER; DET PAUL ZAINO,
SHIELD #4702, NARCOTICS BOROUGH BRONX,
INDIVIDUALLY AND AS POLICE OFFICER;
POLICE OFFICER ARMANDO RIVAS, SHIELD
#2833, 44 PCT., INDIVIDUALLY AND AS A POLICE
OFFICER; and NYPD OFFICERS JOHN
AND JANE DOES # 1-40, INDIVIDUALLY AND AS
POLICE OFFICERS,

Defendants

VERIFIED
COMPLAINT

INDEX NO.

Plaintiffs, SHANNON JONES, BRITTANY WILLIAMS, AND BRYAN ROMAN,

(collectively herein "Plaintiffs" or "Named Plaintiffs"), each individually by and through their

attorney, The Law Office of Jeffrey L. Emdin, as and for their Complaint, alleges as follows:

5

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

## PRELIMINARY STATEMENT

1. On May 25, 2020, police in Minneapolis, MN, killed George Floyd. Almost immediately protests against police violence and in support of police accountability arose throughout the country. These protests, including those organized by the Black Lives Matter movement and others, spread across the United States and the world, including here in New York City where thousands exercised their constitutional right(s) to protest.

2. In the days, weeks, and months following Floyd's killing, protests occurred in New York City[1].

3. The New York City Police Department ("NYPD") deliberately engaged in activities that violated the constitutional rights of individuals who were protesting police misconduct, including, *inter alia*, corralling protesters into spaces where they could not escape, beating protestors with batons and fists, throwing protestors to the ground, kneeling on the protestors backs, necks and other parts of their bodies, using pepper spray indiscriminately, using excessive force, failing to intervene, stop, or mitigate the excessive use of force all of which ultimately resulting in injuring and arresting many of the protestors without lawful justification.

4. Upon information and belief, from May 28, 2020 through June 4, 2020, approximately 2,000 protestors were arrested by the New York City Police Department, "NYPD" throughout New

---

[1] Protests in New York City were held from on or about May 28, 2020 to on or about December 20, 2020.

6

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

York City, many of whom were subjected to excessive force, excessive detention and violations of their constitutional rights.

5. On June 4, 2020, a protest was held in the area of the Bronx known as Mott Haven ("Mott Haven protest").

6. All of the above named Plaintiffs attended the Mott Haven protest.

7. At or prior to the time of the protests in New York City, Mayor de Blasio had issued Emergency Executive Orders related to "the presence of Covid-19 in the city" (Covid-19 Declaration of Emergency").

8. The first Emergency Executive Order (Executive Order No 98) was issued on March 12, 2020 and was extended by Emergency Executive Order No 112 on May 9, 2020.

9. On June 1, 2020, Mayor de Blasio issued Emergency Executive Order 117, citing the escalation of protest activity to include acts of assault, vandalism, property damage and/or looting (at unspecified dates, times and/or locations) and the Mayor ordered a city-wide curfew beginning at 11:00 p.m. on June 1, 2020 until 5:00 a.m. on June 2, 2020.

10. Upon information and belief, Mayor de Blasio issued Emergency Executive Order 118, ordering a city-wide curfew from 8:00 p.m. on June 2, 2020, until 5:00 a.m. on June 3, 2020.

11. Upon information and belief, Mayor de Blasio issued Emergency Executive Order 119, ordering a city-wide curfew from June 3, 2020 to June 8, 2020 between the hours of 8:00 p.m. and 5:00 a.m.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

12. According to Emergency Executive Orders 117, 118 and 119, "a failure to comply with the Order shall result in orders to disperse." It is alleged herein that no such order to disperse or opportunity to disperse was provided to the protestors at the Mott Haven protest on June 4, 2020.

13. The NYPD, under the pretext of Mayor de Blasio's Emergency Executive Orders engaged in unlawful and impermissible violence to disrupt the those attending the Mott Haven protests from exercising their rights under the First Amendment of the United States Constitution to peaceably assemble and petition for a redress of their grievances.

14. The Mott Haven protestors, including the plaintiffs, were injured, arrested and physically restrained with flex-cuffs in such a manner that caused them unnecessary pain and suffering and, in some cases, possible serious and long-term nerve damage.

15. The Mott Haven Protestors were also subjected to lengthy and unnecessary arrest processing and detention that confined them in dangerously close quarters for hours, all at the height of the global COVID-19 pandemic.

16. Upon information and belief, defendants Dermot Shea, (hereinafter referred to as "Shea") Commissioner of the New York City Police Department, Terrence Monahan (hereinafter referred to as "Monahan"), Chief of Department, New York City Police, and Assistant Chief Kenneth Lehr (hereinafter referred to as "Lehr"), Commander of Patrol Borough Bronx, together formulated a plan/strategy/response to the ongoing police protests in New York City which ultimately resulted in the suppression of and/or mass arrest of protestors throughout

8

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

New York City, including more than 250 people present at the protest at Mott Haven, Bronx County on June 4, 2020, including the plaintiffs.

17. Upon information and belief, defendant Shea has described the New York Police Department as a para-military organization, which relies on a chain of command, and that with respect to the NYPD response to protests that occurred in New York City from May through June, 2020, he personally participated in monitoring events; making decisions with respect to planning, deployment and response; including but limited to: taking part in/at planning meetings, executive conferences, phone calls, discussions with command staff, and general oversight.

18. Upon information and belief, it was at these meetings/strategy sessions/discussions that Shea, Monahan, Lehr and others formalized the use and deployment of the NYPD Strategic Response Group operations officers, (SRG), precinct officers, TARU officers, Legal Bureau representatives, logistic support and aviation flying missions as resources to be used in a response to the protests, including the protest in Mott Haven, Bronx.

19. Upon information and belief, at these meetings/strategy sessions/discussions Shea, Monahan, Lehr and others authorized the use of chemical spray, zip ties or flex cuffs, use of SRG bikes, and police batons in response to the protest and protestors.

20. Upon information and belief, at these meetings/strategy sessions/discussions Shea, Monahan, Lehr and others formulated a plan with respect to the manner of detaining and processing those arrested.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

21. Upon information and belief, at these meetings/strategy sessions/discussions that Shea, Monahan, Lehr and others formalized the use of kettling those at, in, or near the protest sites.

22. Upon information and belief, kettling derives from a German military tactic of encircling an enemy army with a superior force before annihilating the trapped military force.

23. Police, including the NYPD and other para-military forces have adapted the tactic to use against civilians purportedly to neutralize individuals seeking to engage in violent actions.

24. The targeted group is surrounded by police and/or para-military forces and prevented from leaving the area without permission of the commander of the encircling forces.

25. The individuals within the cordoned off area are not permitted to leave and can be denied access to food, water, and toilet facilities indefinitely.

26. Kettling makes no attempt to distinguish between individuals fomenting violence, peaceful protestors, and/or other civilians whose only crime is being within an area being cordoned off by the police and/or paramilitary forces.

27. Upon information and belief Monahan and the City had previously used the strategy of kettling to suppress a previous protest, i.e. at the 2004 Republican National Convention ("RNC").

28. Upon information and belief Monahan attended and was present in his official capacity as Deputy Chief of the New York City Police Department, at the 2004 Republican National Convention ("RNC").

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

29. Upon information and belief the New York City Liberties Union published a report finding that the NYPD engaged in mass arrests of peaceful protestors and bystanders, severely undermining their rights at the "RNC." [2]

30. Upon information and belief, sixty-three (63) complaints were filed with the Civilian Complaint Review Board "CCRB" with respect to police violations that occurred at the RNC. Upon information and belief, the CCRB published their own findings in 2006 and found that Monahan failed to make dispersal orders sufficiently audible and/or understandable and failed to allow protestors time to leave prior to effecting the arrests of nearly 250 people.

31. Upon information and belief, like the "RNC" the same or similar kettling tactics were used by the NYPD, Shea, Monahan and/or Lehr at New York City protests from May 28, 2020 through June 4, 2020, resulting in mass arrests, and excessive use of force on, and injury to protestors, including those attending the Mott Haven, Bronx protest "Mott Haven", which the plaintiffs attended on June 4, 2020. Upon information and belief Monahan has falsely denied being familiar with the term or strategy of kettling prior to June 4, 2020

32. Upon information and belief, Shea, Monahan and/or Lehr also formulated a plan or procedure with respect to how the NYPD communicated the Emergency Executive Order

---

[2] NY Civil Liberties Union, Rights and Wrongs at the RNC (2005), https://www.nyclu.org /sites/default/files/publications/nyclupubrightswrongsrnc.pdf

11

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

119 to police officers: through the use of phone messages, emails and use of the NYPD's internal messaging system known as "FINEST".

33. Upon information and belief, a finest message relating to Emergency Executive Order 119 was sent to NYPD police officers on June 3, 2020.

34. Upon information and belief said finest message did not inform police officers of the requirement to provide protestors with a warning before issuing a curfew violation or C-Summons.

35. Upon information and belief, Commissioner Shea has acknowledged that the purpose of the "warning" was so that they (the protestors) can comply and disperse without being subjected to a summons or arrest.[3]

36. Upon information and belief, Commissioner Shea subsequently acknowledged that blocking people off, preventing them from leaving, while at the same time issuing warning, to leave would be contrary to each other.

37. Upon information and belief, all NYPD police officers, at the time of Emergency Executive Orders 117, 118, and 119, were required to wear masks while on duty.

---

[3] The New York City Department of Investigation (DOI) conducted interviews with New York Police Commissioner Shea and chief of Department Monahan. Said interviews were made part of DOI 12/18/20 report. See Investigation into NYPD Response to the George Floyd Protests, https://www1.nyc.gov/assets/doi/reports/pdf/2020/DOIRpt.NYPD%20Reponse.%20GeorgeFloyd%20Protests.12.18.2020.pdf

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

38. Upon information and belief, NYPD police supervisors, at the time of the Mott Haven protest on June 4, 2020, did not enforce the NYPD mask requirement, and the officers present at that protest and the other protests preceding it, were not wearing masks.

39. According to Monahan, Chief Kenny Lehr, the Commanding Officer of the Bronx Borough Patrol, was in charge of the NYPD planning and response to the Mott Haven protest in the Bronx on June 4, 2020.

40. Upon information and belief, Lehr was present on the ground and in command at all times during the Mott Haven protest. Monahan also acknowledged to being present at said protest.

41. According to Monahan, it was Chief Lehr who made the ultimate determination relating to deployment and use of police personnel, including the use of SRG officers and SRG bikes at the Mott Haven protest on June 4, 2020.

42. Upon information and belief, Chief Lehr and Monahan, with the approval of Shea, made the decision to use Strategic Response Group officers (SRG) on roof tops, to use SRG officers and SRG bikes as well as other police officers to block, and surround ("kettle") and imprison protestors (prior to 8:00 p.m.) with police personnel.

43. Upon information and belief, it was also with Shea, Monahan, and Lehr's knowledge, authority and order that police personnel kettled protestors prior to 8:00 p.m. and made mass arrests of more than 250 individuals in the kettled area on 136th Street between Brown Place and Brook Avenue in Bronx County ("the location") on June 4, 2020, including the plaintiffs named herein.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

44. It is alleged herein that the defendants, individually and collectively, participated in various unlawful practices that lead to false arrests and/or excessive use of force on non-violent protestors who were exercising their first amendment rights at the time of the Mott Haven protest, and at prior police protest in New York City from May 28, 2020 through June 4, 2020, and who had not violated the Mayor's Curfew Order.

45. The unlawful policies and practices used by the defendants against protestors included the aforementioned crowd-control tactic known as "kettling" or surrounding a group of individuals with the purpose to coral, detain, and arrest them.

46. Once "kettled", NYPD officers indiscriminately used chemical spray, bikes, batons, hands, knees and bodies, struck protestors, and engaged in excessive force. [4]

47. On June 4, 2020 (and prior to June 4, 2020), the Defendants used kettling and similar tactics in order to prevent protestors from complying with the curfew order, to cause confusion, fear and/or hysteria, to conduct mass arrests without probable cause, and use excessive force and injury once arrested, protestors were subjected to prolonged for minor offenses, many of which were eligible to receive a C-Summons.

---

[4] Human Rights Watch Report: "Kettling": Protestors In the Bronx, systematic Police Brutality and its costs in the United States, (2020) documented at least 61 cases of individuals who sustained injuries, including broken nose, lost tooth, sprain shoulder, broken finger, black eyes, lacerations, scarring and nerve damage arising from police conduct at the Mott Haven protest. https://www.hrw.org/report/2020/09/30/kettling-protesters-bronx/systemic-police-brutality-and-its-costs-united-states

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

48. The "kettling" tactic was employed by the defendants at the Mott Haven protest prior to 8:00 p.m., on June 4, 2020.

49. Upon information and belief, defendants Lehr and Monahan gave the order to form the kettle, were present when the kettle formed, and failed to stop the kettle from forming all prior to 8:00 p.m.

50. Upon further information and belief, Lehr and Monahan failed to issue a dispersal warning prior to forming the kettle.

51. Upon information and belief, Lehr and Monahan were present and knew of the widespread use of chemical spray on peaceful protestors, the use of batons on peaceful protestors; the use of excessive force on protestors; and the mass arrest of protestors, including the plaintiffs named herein, and did nothing to stop it from occurring.

52. Upon information and belief, Lehr and Monahan ignored the protestors rights and requests to be free from being kettled.

53. Once kettled, the Bronx protestors continuously chanted "let us go, let us go."

54. The defendants ignored said pleas even though it was prior to curfew.

55. Instead, officers used their bikes, their bodies, their shields and batons to coral the protestors from all sides, pushing them closer and closer together.

56. At or around 8:00 p.m., the defendants began spraying the crowd with mace, striking individually with batons, jumping on cars while swinging batons, grabbing peaceful

15

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

protestors and throwing them to the ground, placing knees on their backs, striking them and engaging in various acts of brutality.

57. Upon information and belief, the City, Shea, Lehr and/or Monahan made the determination to effectuate the mass arrests of the protestors at Mott Haven and utilize the use of flex cuffs, to do so.

58. Although hundreds of officers were deployed, each with multiple flex cuffs, the officers were not provided with proper training in the use and application of the flex cuffs and were not provided the necessary instruments to cut or loosen the flex cuffs when they were applied too tightly.

59. This includes the flex cuffs which were applied on the plaintiffs herein, all to the pain and suffering of the protestors.

60. Upon information and belief, the City, Shea, Lehr and Monahan made the determination to detain and keep the flex cuffs on the prisoners for excessive lengths of time, despite previous complaints of pain and damage stemming from improper and/or excessive length of time arresters were kept in flex cuffs.

61. At the Mott Haven protest, prisoners remained in flex cuffs even after they were placed in locked holding cells while there was no need or justifiable reasons to keep prisoners in flex cuffs.

62. The prolonged and improper use of flex cuffs caused prisoners such as the plaintiffs' additional unnecessary pain and damage.

16

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

63. All of these aforementioned activities were without lawful justification, without probable cause and without need of force, or the need amount force utilized against the plaintiffs named herein.

64. Most of the officers present at the Mott Haven protest who participated in the aforementioned events, were not utilizing COVID safety protocols including not wearing masks while making arrests, searching, touching and processing the protestors including the plaintiffs.

65. The supervisors present, including but not limited to Monahan and Lehr, did not require officers to wear masks.

66. The defendants placed the plaintiffs and other protestors in dangerous health situations, including transporting protestors who were part of mass arrests, including the plaintiffs and other prisoners.

67. Prisoners were confined in close quarters without ventilation and without social distancing.

68. The prisoners were placed in crowded cells with prisoners who had lost their masks during their arrests, causing them further emotional trauma.

69. As stated in the Human Rights Watch Report, "police conduct during the Mott Haven protest on June 4, 2020 documented in this report, amounts to serious violations of international law human right to which the federal, state and local governments are obligated to serve".

70. These documented violations include law enforcements' "excessive use of force, violations of the right to free expression and peaceful assembly, arbitrary arrests and detentions and cruel and degrading treatments of detainees."

17

**FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM**
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

71. These acts of abuse by the NYPD in response to protests were not unique to Mott Haven.

72. According to a lawsuit filed by the New York State Attorney General, against the City of New York, the Mayor, Shea and Monahan, 21-cv-322 USDC, Southern District, there were 1,646 allegations of police misconduct reported between May 28 and June 20, 2020.

73. Despite evidence of widespread misconduct and constitutional violations by police officers, Shea is on record having ratified the conduct by stating that the NYPD mobilization plan was executed flawlessly in Mott Haven. [5]

74. The City, the NYPD, the defendants and its employees used, condoned and were deliberately indifferent to the NYPD's practice of using excessive force against peaceful protestors and arrestees in general.

### *PARTIES*

75. Plaintiff, Shannon Jones, is a resident of the City of New York, County of Kings, and State of New York.

76. Jones timely filed and served a Notice of Claim on the City of New York.

77. Jones submitted to a hearing pursuant to Section 50-H of the General Municipal Law.

78. More than thirty days have elapsed since Jones served a Notice of Claim and the City as not offered and/or Jones has not accepted adjustment or payment of her claim.

---

[5] Jake Offenheartz, Nick Pinto and Gwynne Hogan, *"NYPD's Ambush of Peaceful Bronx Protestors Was "Executed Nearly Flawlessly,"* City Leaders Agree*, Gothamist June 5, 2020. https://gothamist.com/news/nypds-ambush-of-peaceful-bronx-protesters-was-executed-nearly-flawlessly-city-leaders-agree

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

79. Plaintiff, Brittany Williams, is a resident of the City of New York, County of Kings, and State of New York.

80. Williams timely filed and served a Notice of Claim on the City of New York.

81. Williams submitted to a hearing pursuant to Section 50-H of the General Municipal Law.

82. More than thirty days have elapsed since Williams served a Notice of Claim and the City as not offered and/or Williams has not accepted adjustment or payment of her claim.

83. Plaintiff, Bryan Roman, is a resident of the City of New York, County of Queens, and State of New York.

84. Roman timely filed and served a Notice of Claim on the City of New York.

85. Roman submitted to a hearing pursuant to Section 50-H of the General Municipal Law.

86. More than thirty days have elapsed since Roman served a Notice of Claim and the City as not offered and/or Roman has not accepted adjustment or payment of his claim.

87. Defendant, City of New York is a municipal entity created and authorized under the laws of the State of New York.

88. The City is authorized by law to maintain a police department, and does maintain the New York City Police Department "NYPD", which acts as its agent in the area of law enforcement and for which it is ultimately responsible.

89. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

90. At all relevant times herein the city employed defendants Shea, Monahan, Lehr, Wilson, Sperenza, Haque, Zaino, Boria, Rivas and John/Jane Does # 1-40 who were each acting in their capacities as police officers on June 4, 2020.

91. Defendant, NYPD Commissioner Dermot Shea, was at all times relevant to this Complaint, and still is, the Police Commissioner of the NYPD.

92. As Police Commissioner, Defendant Shea, personally and/or through his authorized delegates, had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures relating to mass arrest, demonstrations, protests, deployment, assignments, personnel hiring, training, supervision, retention, strategy, and discipline with respect to NYPD operations and with respect to NYPD officers' supervision and performance of their duties, and constitutes a City policymaker for whom the City is liable.

93. Defendant Terrence Monahan was, at all times relevant to this Complaint, the Chief of Department of the NYPD who had policymaking authority over the Department.

94. Upon information and belief at all relevant times, as Chief of Department, defendant Monahan, had primary and final responsibility and authority with respect to NYPD policies and operations including those related to the management of protests, use of force, and arrests.

95. Within the paramilitary structure for the NYPD, all NYPD uniformed members of the service were obligated to obey only any lawful order given by him.

20

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

96. Defendant Terrence Monahan is sued individually and in his official capacity.

97. Defendant Assistant Chief, Kenneth Lehr was, at all relevant times set forth herein, the Commander of Patrol Borough Bronx and is sued individually and in his capacity as a police officer.

98. Defendant Lt. Romaine Wilson ("Wilson") was, at all relevant times set forth herein, an employee of the City of New York and the NYPD and is sued individually and in his capacity as a police officer.

99. Upon information and belief on June 4, 2020, at all relevant times herein, Wilson was assigned to the 40th precinct.

100. Upon information and belief, prior to June 4, 2020, Wilson had 6 complaints filed against him, containing 19 allegations, three of which substantiated by the Civilian Complaint Review Board and 6 closed due to pending litigation.

101. Wilson's substantiated charges included discourtesy, offensive language and abuse of authority.

102. Upon information and belief, defendant Wilson has also been the subject of three lawsuits in his capacity as a police officer, resulting in paid settlement to plaintiffs.

103. Upon information and belief, prior to June 4, 2020, the NYPD failed to take any action to discipline Wilson for the substantiated findings.

104. Upon information and belief, Wilson assaulted, battered, used excessive force and arrested Jones, on June 4, 2020.

21

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

105.    Defendant Police Officer Luke Speranza ("Speranza") was, at all relevant times set forth herein, an employee of the City of New York and the NYPD and is sued individually and in his capacity as a police officer.

106.    Upon information and belief, on June 4, 2020 Speranza was assigned to the 40th precinct and his shield # is 11812.

107.    Defendant Detective Christopher P. Boria ("Boria") was, at all relevant times set forth herein, an employee of the City of New York and the NYPD, is sued individually and in his capacity as a police officer.

108.    Upon information and belief on June 4, 2020 Boria was assigned to SRG #4 and his shield # is 26858.

109.    Defendant Detective Paul Zaino ("Zaino") was, at all relevant times set forth herein, an employee of the City of New York and the NYPD and is sued individually and in his capacity as a police officer.

110.    Upon information and belief, on June 4, 2020, Zaino's shield # is 4702.

111.    Upon information and belief Zaino is currently assigned to Narcotics Borough Bronx.

112.    Upon further information and belief, Zaino has been the subject of at least 11 lawsuits while acting in his capacity as a New York Police Department officer.

113.    Defendant Armando Rivas ("Rivas") was, at all relevant times set forth herein, an employee of the City of New York and the NYPD and is sued individually and in his capacity as a police officer.

22

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

114. Upon information and belief, Rivas' shield # is 2833 and he is assigned to the NYPD's 44th Precinct.

115. Defendant Niazul Haque ("Haque") was, at all relevant times set forth herein, an employee of the City of New York and the NYPD and is sued individually and in his capacity as a police officer.

116. Upon information and belief on June 4, 2020, Haque was assigned to the NYPD's 40th Precinct.

117. Defendant John and Jane Does #1-#40 were, at all relevant times set forth herein, employees of the City of New York and the NYPD and are sued under fictitious names as their identities are presently unknown.

### PRELIMINARY FACTS

118. Upon information and belief Monahan attended and was present in his official capacity as Chief of the New York City Police Department, at the Bronx, Mott Haven protest on June 4, 2020 and gave the order to kettle the protestors and effectuate their mass arrests.

119. Upon information and belief, Lehr was present, and acting in the scope of his employment with the NYPD and the City and directed/authorized the command, strategy tactics, and oversight, supervision, of the officers present at the Mott Haven protest and of the arrest of those individuals who participated in the Mott Haven protest, including the plaintiffs herein.

23

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

120.    Upon information and belief Wilson was present and at all times acting in the scope of
his duty as a New York City Police officer on June 4, 2020 at the Mott Haven protest in
Bronx County between the approximate hours of 7:00 pm. and 9:00 p.m.

121.    Upon information and belief Speranza was present and at all times acting in the scope of
his duty as a New York City police officer on June 4, 2020 at the Mott Haven protest in
Bronx County between the approximate hours of 7:00 pm. and 9:00 p.m.

122.    Speranza is listed as Jones reporting/investigating officer and filed the false complaints
against Jones, containing information provided by Wilson.

123.    Upon information and belief Boria was present and at all times acting in the scope of his
duty as a New York City police officer on June 4, 2020 at the Mott Haven protest in Bronx
County between the approximate hours of 7:00 pm. and 9:00 p.m.

124.    Upon information and belief Zaino was present and at all times acting in the scope of his
duty as a New York City Police officer on June 4, 2020 at the Mott Haven protest in Bronx
County between the approximate hours of 7:00 pm. and 9:00 p.m.

125.    Upon information and belief Rivas was present and at all times acting in the scope of his
duty as a New York City police officer on June 4, 2020 at the Mott Haven protest in Bronx
County between the approximate hours of 7:00 pm. and 9:00 p.m.

126.    Upon information and belief Haque was present and at all times acting in the scope of his
duty as a New York City police officer on June 4, 2020 at the Mott Haven protest in Bronx
County between the approximate hours of 7:00 pm. and 9:00 p.m.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

127.    Upon information and belief Defendant John and Jane Does #1-#40 were present and at
all times acting in the scope of their duty as a New York City police officers on June 4, 2020
at the Mott Haven protest in Bronx County between the approximate hours of 7:00 pm. and
9:00 p.m.

128.    On June 4, 2020, plaintiffs peacefully attended a protest taking place in the Mott Haven
section of Bronx County, New York.

129.    Most of the protestors initially met at the "Hub" located at 149th Street in Bronx County.

130.    There was large police presence surrounding the "hub," with officers placed on rooftops,
near subways, and many were dressed in full riot gear, including Kevlar vests, helmets and
forearm plates.

131.    The protest itself was peaceful, with little or no interaction with NYPD as it made its way
toward East 136th Street, Bronx County.

132.    At approximately 7:40 p.m. – 7:45 p.m., SRG officers in full riot gear, sped past the
protestors on E 136th Street and formed a line with their bicycles at Brook Avenue, blocking
the protestors from proceeding any further.

133.    It was at that time and location that the SRG officers lifted their bicycles and used them
as weapons, pushing the protestors back, while additional officers, in white shirts and others
in blue uniform provided support behind them.

134.    Additional officers blocked the protestors from the rear, blocking any means of escape at
the intersection of 136th Street and Brown place.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

135.   The sides of E 136th Street were also bounded by buildings, fences and officers.

136.   Upon information and belief the "kettle" was fully formed by the defendants at approximately 7:45 p.m., trapping most of the protestors inside.

137.   Plaintiffs Williams and Jones who were towards the front of protest, were two of the few individuals who were able to escape the kettle before it was fully formed.

138.   However, most of the protestors, including Roman, were trapped in the kettle, and unable to leave it prior to 8:00 p.m.

139.   The defendants' actions caused widespread panic, and almost immediately chants of "let us go" "let us go" arose.

140.   The NYPD, including Monahan and Lehr, failed to respond to said pleas, refused to allow people to disburse, and ignored the fact that it wasn't 8:00 p.m.

141.   Furthermore, they ignored the fact that the protest had been peaceful.

142.   Instead, the defendants tightened the kettle, pushing the protestors closer and closer together during a pandemic, and SRG officers in synchronized fashioned were directed to advance with their bicycles lifted in the air pushing the protestors back.

143.   Once Jones and Williams made it out of the kettle, they walked to the far side of Brook Avenue.

### *Police Violence Against Shannon Jones*

144.   At approximately 7:50 pm, on June 4, 2020, Jones was present on Brook Ave near the intersection of 136th Street in Bronx County

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

145.   Jones was in front of the kettle at the intersection of Brook Ave and E 136th when she was approached by defendant Monahan and others.

146.   Upon information and belief, Monahan directed, ordered and/or authorized the arrest of plaintiff Jones.

147.   Upon information and belief, Defendant Wilson immediately grabbed, seized, choked, and violently threw Jones to the ground.

148.   Jones was not resisting arrest and posed no threat to Wilson or to the "officers."

149.   Upon information and belief, John Doe #1, identity unknown, (blue uniform, helmet) assisted in the arrest of Jones, and both he and Wilson straddled Jones' body placing their full weight on her back/neck, while she was face down on the ground.

150.   Jones was injured by the Defendants' actions

151.   Jones was placed in handcuffs and arrested.

152.   Upon getting off the ground Jones was also placed in extremely tight zip ties or flex cuffs.

153.   Jones, together with plaintiff Williams was transported to the NYPD's 40th Precinct.

154.   Jones was searched and placed in a locked holding cell which was filled with approximately 12 people.

155.   Upon information and belief, Defendant Speranza is listed as Jones' arresting officer.

156.   Upon information and belief Wilson is listed as the supervisor approving Jones' arrest.

27

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

157. Upon information and belief, Monahan and/or Lehr was present at the time Wilson and John Doe #1 committed the aforementioned acts.

158. Upon information and belief Monahan witnessed and approved Jones' arrest and did nothing to prevent the use of excessive force on Jones, or investigate the excessive force used on her.

159. Jones was falsely charged with resisting arrest.

160. Jones was held in custody at the 40th precinct, where she was fingerprinted and photographed and placed in a crowded cell.

161. Jones was not provided food or water or an opportunity to make a phone call.

162. Jones was released with a Desk Appearance Ticket (DAT) at approximately 2:00 a.m. June 5, 2020.

163. Jones' license was confiscated by the defendants and never returned.

164. As a result of the aforementioned actions, Jones was injured, physically and emotionally, requiring medical treatment.

165. All criminal charges against Jones were dismissed and thus a favorable termination in Jones's favor was attained.

### *Police Violence Against Brittany Williams*

166. At the same time that Jones was being assaulted and battered, Plaintiff Brittany Williams was also the subject of an unprovoked attack by NYPD personnel.

28

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

167.    At approximately 7:50 p.m. at the location, John/Jane Does # 2-7, identities presently

unknown, violently tackled, seized and grabbed plaintiff Williams, threw her to the ground,

placed their knees and bodies on her and struck her in the head with a baton and arrested her.

168.    Although many police officers were present, not one interceded and stopped the use of

illegal, unnecessary and/or excessive force on Williams, or her false arrest.

169.    Upon information and belief, Monahan and/or Lehr was present at the time of Williams'

arrest, approved her arrest, and did nothing to prevent the use of excessive force on Williams,

or investigate the excessive force used on her.

170.    Williams was bleeding from her head and in need of immediate medical help.

171.    Instead of providing Williams with immediate medical care, Williams was searched, and

transported to the NYPD 40th Precinct.

172.    Williams was falsely charged with violating Administrative Code 3-108 and released

with C-Summons #4448278977.

173.    Williams was removed from the 40th pct., at approximately 9:00 pm and taken to Lincoln

Hospital via ambulance.

174.    Police Officer Haque is listed as Williams' arresting officer and issued Williams the C-

Summons for violating the mayor's curfew.

175.    All criminal/administrative charged have been dismissed against Williams arising from

the aforementioned C-Summons and thus a favorable termination in Williams's favor was

attained.

29

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

176.   Williams was physically and emotionally injured as a result of the defendant's actions.

### Police Violence Against Bryan Roman

177.   At approximately 7:45 pm Roman was "kettled" by the defendants on East 136th Street between Brown Place and Brook Ave, Bronx, NY.

178.   Roman was physically not permitted to leave said area by the defendants despite no dispersal order having been given by any of the defendants.

179.   Roman had not committed any crime.

180.   At approximately 8:00 p.m. Roman witnessed officers attacking the protestors, hitting them with batons on their heads, arms, bodies, jumping on cars, pushing and kicking them, using pepper spray and violently arresting them. The officers' conduct created widespread panic and confusion. The use of force was excessive, protestors were not resisting arrest.

181.   A police officer struck Roman in his side with a baton.

182.   An officer swung Roman to the ground, put his knee on Roman's back and placed him in extremely tight flex cuffs or zip ties.

183.   Roman was left face down on the ground for approximately five minutes before he was picked up by defendant Zaino.

184.   Roman complained to Zaino that his flex cuffs were too tight and extremely painful.

185.   Zaino informed Roman that he didn't have scissors to cut them.

186.   Roman and many other protestors continuously asked for help for Roman.

30

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

187. The zip ties were applied so tight that they were cutting off circulation Roman's hands, causing extreme pain, and causing Roman's hands and fingers to turn color from lack of circulation.

188. Roman, like many others arrested at the protest was forced to remain zip tied in the street for approximately an hour before being placed in a crowded transportation vehicle.

189. Even when Roman's zip ties were eventually removed, they were replaced by another set that were as equally tight and painful. In fact, defendant Boria purposely tightened the zip ties, causing Roman extreme pain.

190. Upon information and belief, Monahan and/or Lehr was present at the time of Roman's arrest, approved his arrest, and did nothing to prevent the use of excessive force on Roman, or investigate the excessive force used on him.

191. Upon information and belief, Rivas was assigned Roman's arrest.

192. Roman was transported from Mott Haven to Queens Central Booking in Kew Gardens.

193. Roman was made to stand outside of Queens Central Booking in the rain for approximately (4) four hours, while still in the aforementioned zip ties.

194. Roman was cold, wet and in terrible pain.

195. Roman was taken from Queens Central Booking and transported, while still in zip ties, to a detention center in Brooklyn.

196. Roman was held in custody until approximately 6:00 am on June 5th when he was released with a summons (#4442399209) charging him with violating the Mayor's curfew.

31

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

197.    Throughout the entire process, Roman was handled by NYPD personnel who were not wearing masks, he was not offered food or water and was detained in crowded cells.

198.    Roman was not given an opportunity to make a phone call.

199.    Roman's detention or imprisonment was excessive in that he was held for more than ten (10) hours.

200.    Roman's summons was dismissed, (docket #2020SX014821) on September 5, 2020 and thus a favorable termination in Roman's favor was attained.

201.    Roman was physically and emotionally injured as a result of the defendant's actions.

202.    Hereby alleged, pursuant to CPLR 1603, that this action is exempt from the operation of CPLR 1601 from the operation of CPLR 1601, by reason of one or more of the exemptions provided in CPLR 1602.

### The NYPD's History of Mishandling Protests

203.    The extensive deprivations of constitutional rights suffered by protestors including the Plaintiffs, during the 2020 protests are part of the NYPD's long history of aggressive and unconstitutional policing of certain First Amendment-protected activities going back many years, including, *inter alia,* protests denouncing the murder of Amadou Diallo in 1999, as well as protests against the World Economic Forum (the "WEF") in 2002, the Iraq War in 2003, the Republican National Convention ("RNC") in 2004, the Occupy Wall Street ("OWS") protests in 2011 and 2012, and many other protests since, including Black Lives Matter and anti-police brutality protests.

32

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

204.   The NYPD response to the protests in New York City the summer of 2020 was in line with its history of violent and unconstitutional responses to past protests challenging police conduct in New York City, including its treatment of certain First Amendment assemblies with demoralizing and brutal shows of force, rather than genuine efforts to facilitate protestors' protested First Amendment activity.

205.   For example, the NYPD met protests following the start of the Iraq War in 2003 with mass arrests, excessive force, use of pepper spray, riding horses into crowds and baton strikes to disperse protestors, and kettling to move protestors from specific locations to effectuate mass arrests. [6]

206.   The next year, during the police "Operation Overload II" operation in response to the Republican National Convention in 2004, NYPD members treated protestors to similar uses of kettling tactics, excessive force and mass arrests, and excessive and unreasonable detention. [7]

207.   The NYPD continued to employ similar mass arrest and excessive force tactics during a years-long crackdown on Critical Mass bicycle rides beginning in 2004. [8]

---

[6] *See, e.g.*, N.Y. Civil Liberties Union, Arresting Protest (2003), available at https://www.nyclu.org/default/files/nyclu_arresting_protest.pdf.

[7] *See, e.g.*, N.Y. Civil Liberties Union, Rights and Wrongs at the RNC (2005), available at https://www.nyclu.org/sites/default/files/publications/nyclu_pub_rights_wrongs_rnc.pdf.

[8] *See, e.g.*, *Callaghan v. City of New York*, 07 Civ. 9611 (PKC) (JLC) (S.D.N.Y.).

33

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

208.   Similarly, during the Occupy Wall Street ("OWS") protests in 2011, the NYPD used
       excessive force against protestors, bystanders, and National Lawyers Guild- New York City
       Chapter Legal Observers, as well as kettling tactics to move protestors or initiate mass
       arrests.[9]

209.   Additionally, defendants have employed the same tactics and practices against Black
       Lives Matter, police accountability, and other, similar protests, over the intervening years.

210.   Following NYPD conduct during these and other protests, the City of New York and the
       NYPD and its members have been sued repeatedly by protestors who alleged that they had
       been unlawfully detained, kettled, arrested, subjected to mass arrest, unreasonable and
       prolonger detentions and violations of their First Amendment and other, related rights, much
       in the same manner as have the Plaintiffs in this case.

211.   In many these cases defendants employed tactics developed and modified over the course
       of many years by defendants Shea, Monahan, and their predecessors and by other defendant
       City policymakers at and in connection with other demonstrations in the City dating back to
       around 2000 and continuing through the present, including the policies, practices, and
       customs complained of herein, and also described and litigated in the following cases:

       a)   *Mandal v. City of New York.*, 02-cv-1234 (WHP) (FM) (S.D.N.Y) and related cases
            challenging NYPD's written and unwritten policies and practices enacted after the police
            shooting of Amadou Diallo in 1999 and formalized in writing as early as 2001. As a
            result of these policies, the NYPD began detaining and fully processing people arrested

---

[9] *See People of the State of New York v. City of New York et al.*, 21-cv-0322, Dkt. No. 1 at ¶ 26
(S.D.N.Y.).

34

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

for non-criminal violations who were otherwise eligible to be processed and released with Desk Appearance Tickets ("DATs"). *See, e.g. "Mandal I," No.* 02-cv-1234 (WHP), 02-cv-1367 (WHP), 02-cv-6537 (WHP), 2006 WL 2950235, at *4-7 (S.D.N.Y. Oct. 17, 2006) (denying summary judgement on plaintiff's Fourteenth Amendment Equal Protection and First Amendment- based claims that the policies "constituted facial violations of [plaintiffs'] First Amendment rights because they were denied DATs or summonses based on the fact that they participated in demonstrations"; *Mandal v. City of New York ("Mandal II"),* No. 02-cv-1234 (WHP), 02-cv-1367 (WHP), 2007 WL 3376897, at *2 (S.D.N.Y. Nov. 13, 2007) ("Mandal II") (noting that approximately 38 Mandal plaintiffs prevailed at trial on claims that "the City had an unconstitutional written policy of denying persons arrested at demonstrations individual consideration for summonses and DATs");

b) *Barley v. City of New York,* 03-cv-2915 (WHP)(FM) 2005 WL 668789 (S.D.N.Y. March 23, 2005) (class action arising from mass arrests of over 200 demonstrators during 2002 WEF in New York City challenging, *inter alia,* (1) NYPD policy of detaining perceived protestors who were otherwise eligible to be released earlier with DATs for excessive periods of time and denying them consideration for DAT release on the grounds of their perceived participation in protests and (2) policy and practice of using plastic flex cuffs as unreasonable and excessive because of the manner in which the handcuffs were applied and the length of time for plaintiffs were handcuffed);

c) *Allen v. City of New York,* 466 F. Supp. 2d 545, 546 (S.D.N.Y. 2006) (challenging mass arrests made in February 2002 related to the WEF alleging, *inter alia,* that the protestors remained on the sidewalk, walking two abreast and followed all rules of protesting, yet Executive Officers including defendant Monahan, arrested them and "the police deliberately held [protestors] in custody for an unnecessarily long period of time in order to delay their arraignment in Criminal Court";

d) *Haus v. City of New York,* 03-cv-4915 (RWS) (MHD) 2006 WL 1148680, *1 (S.D.N.Y. April 24, 2006) (class action challenging arrests, detentions, and prosecutions of around 300 people in connection with February 15, 2003 anti-war protests, alleging that arrests were made without probable cause and pursuant to arrestees to delayed to "engage in pre-emptive mass arrests and to subject arrestees to delayed and arduous post-arrest processing." *See also Larsen v. City of New York, et al., 04-cv-0665 (RWS) (S.D.N.Y.);*

e) *Kunstler v. City of New York,* 04-cv-1145 (RWS) (MHD) (S.D.N.Y.) and other related cases arising from alleged false and retaliatory arrests in connection with police responses to protests on April 7, 2003, raising *Monell* and other claims similar and related to the

35

policies and practices complained of herein such as encircling protestors, striking them with nightsticks, and using extremely tight plastic handcuffs in their arrest.

f) *MacNamara v. City of New York*, 04-cv-9216 (RJS)(JCF) (S.D.N.Y.) (including the Second Amended Class Action Complaint, Dkt. No. 200-2), *Abdell v. City of New York*, 05-cv-8453 (RJS)(JCF) (S.D.N.Y.), *Schiller v. City New York*, 04-cv-7922 (RJS) (JCF) (S.D.N.Y.), *Kyne v. Wolfowitz*, 06-cv-2041 (RJS)(JCF) (S.D.N.Y.) (including the Second Amended Complaint, Dkt. No. 18), and the dozens of other cases consolidated for discovery purposes in the S.D.N.Y. arising from arrests made, policies related to, the RNC in New York City in 2004, See, e.g., *Schiller*, No. 04-cv-7922 (RJS)(JCF), 2008 WL 200021 at *2-5 (S.D.N.Y. Jan 23, 2008) (nothing the City's consent to amendment of complaints in RNC cases to add, inter alia, "constitutional challenges to the defendants' alleged practice of detaining...all persons in connection with the RNC...no matter how minor the infraction, rather than issuing summonses on the street"); *McNamara v. City of New York*, 275 F.R.D. 125, 154 (S.D.N.Y. 2011) (certifying six "mass arrest subclasses" as well as an "Excessive Detention Class" comprised of all RNC arrestees who were processed pursuant to the RNC Mass Arrest Processing Plan handcuffed with plastic flex cuffs[.]"); *Dinler*, No. 04-cv-7921 (RJS)(JCF), 2021 WL 4513352, at *13-15 (S.D.N.Y. Sept. 30, 2012) (granting plaintiffs' motions for summary judgement on their false arrest claims related to hundreds of people mass arrested at 2004 RNC in connection with a War Resisters League march and denying defendants' cross-motion on false arrest claims);

g) *Callaghan v. City of New York*, 07-cv-9611 (PKC)(JLC) (S.D.N.Y) (including the Third Amended Complaint, Dkt. No. 14) (multi-plaintiff litigation challenging mass arrest policies, practices, and incidents related to post-2004 RNC Critical Mass crackdown spanning several years, pleading *Monell* claims virtually identical to the core *Monell* claims pleased herein));

h) *Osterhoudt v. City of New York*, et. al., No. 10-cv-3173 (RJC)(RML), 2012 WL 4481927, at *1-2, (E.D.N.Y. Sept. 27, 2012) (and the Second Amended Complaint and Demand for Jury Trial, Dkt. No. 22) (denying defendant's motion to dismiss *Monell* claims where plaintiff, who was arrested on during mass arrest on election night in November 2008, cited other lawsuits against the City for mass arrests at Critical Mass bike rides, the 2004 RNC, and the WEF including "a number of complaints alleging that the NYPD conducted mass arrests at demonstrations and in crowd control situations, plausibly alleging a widespread departmental policy of arresting political demonstrators without determining probable cause on an individual basis");

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

i)  Despite (then-Mayor Michael Bloomberg's recognition that "the majority of the [OWS] protestors have been peaceful and responsible," [10] there were more than ninety civil rights actions filed in the S.D.N.Y. arising from NYPD OWS arrests and related policies, including, but not limited to, the cases listed in *Marisa Holmes v. City of New York, et al.*, 14-cv-5253 (LTS) (S.D.N.Y.) (Dkt. No. 13 89) (listing by caption and docket numbers of many OWS-related cases as of March 13, 2015). Some of those cases resulted in judgements and many resulted in substantial settlements prior to trial including *Gerskovich v. Iocco*, 15-cv-7280 (S.D.N.Y. Berman, J.) that settled for $256,000 prior to trial, and which complaint had a similar failure to train *Monell* claim that had been sustained through Defense Rule 12 and Rule 56 motions;

j)  In *Peat v. City of New York*, No. 12-cv-08230 (S.D.N.Y.), fifteen OWS plaintiffs arrested on January 1, 2012, on the sidewalk in the East Village settled a case with Defendant City of New York for $ 598,000. The settled complaint alleged that plaintiffs were peacefully and lawfully protesting when executive members of the NYPD blocked their path on the sidewalk, [11] encircled them on three sides and a building line on the fourth side. The NYPD made dispersal announcements without providing sufficient time or path of egress as members of the scooter task force blocked the protestors path of egress;

k)  Other OWS-related cases have continued through discovery and are awaiting trial, including two cases involving failure to train claims similar to those at issue in this case, which are currently scheduled for trial; *Packard v. City of New York*, 15-cv-7130 (S.D.N.Y.) (AT) and *Case v. City of New York*, 14-cv-9148 (S.D.N.Y.) (AT);

l)  The Plaintiffs in *Case v. City of New York, supra*, were arrested at an Occupy Wall Street protest and subjected to certain NYPD large-scale arrest processing rather than being released on the street with a summons as a result, including *Monell* claims with much in common with many of those raised herein. *See Case v. City of NY*, 233 F.Supp.3d 372 (SDNY 2017); 408 F.Supp.3d 313 (SDNY 2019);

---

[10] Michael Bloomberg, Michael Bloomberg's Statement on the Zuccotti Park Clearance, The Guardian (Nov. 15, 2011, 8:39 EST), http://www.guardian.co.uk/world/2011/nov/15/michael-bloomberg-statement-zucotti-park.

[11] In March and April 2012, NYCLU issued Free Speech Threat Assessments detailing the NYPD's restriction on protestor activity and engaging in a manner to obstruct protestor's ability to engage in First Amendment activity and identified how executive "supervising officers, at random and without warning, pointed to protestors they wanted arrested for disorderly conduct, unreasonable noise, resisting arrest and obstructing governmental administration." http://www.nyclu.org/en/nyc-free -speech-threat-assessment.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

m) The Union Square litigations related to the mass arrests that occurred in and around Union Square Park on September 24, 2011, alleged similar NYPD misconduct that is alleged in this pleading, including, failure to provide reasonable dispersal orders and opportunity to disperse, unnecessary and excessive force used on protestors and overall efforts of the NYPD to deter and demoralize protestors. Nearly all of these cases include multiple plaintiffs and were all settled by the City of New York, including *Clarke v. NYC*, 13-cv-(RWS); *Crisp v. NYC*, 12-cv-5482 (RWS); *Dedrick v. NYC*, 12-cv-7165(RWS); *Dierken v. NYC*, 12-cv-7462(RWS); *Elliot v. NYC*, 12-cv-992 (RWS); and *Hanlin v. NYC*, 12-cv-5844(RWS);

n) Those cases OWS related cases referenced herein, *Gerskovich, Packard, Case Peat*, the Union Square Litigations, as well as several other OWS-related cases, included failure to train *Monell* claims concerning protest activity that are similar to the *Monell* claims in this litigation;

o) The incidents discussed in the 2003 NYCLU special report created by the NYCLU in the wake of the February 15, 2003 antiwar demonstration, titled Arresting Protest, published April 2003, available at https://www.nyclu.org/sites/default/files/publications/nyclu_pub_arresting_portest.pdf;

p) The incidents discussed in the 2005 NYCLU special report created by the NYCLU in the wake of protests at the RNC, titled Rights and Wrongs at the RNC, published in 2005, available at https://www.nyclu.org/sites/default/files/publications/nyclu_pub_rights_wrongs_rnc.pdf;

q) The incidents discussed in the research compiled by the Global Justice Clinic at the New York University School of Law and the Walter Leitner International Human Rights Clinic at the Leitner Center for International Law and Justice at Fordham Law School in their publication titled Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street, published July 25, 2015, available at http://hrp.law.harvard.edu/wp-content/uploads/2013/06/suppressing-protest-2.pdf; and

r) *Edrei v. City of New York*, 16-cv-01652 (JMF)(BCM) (challenging NYPD uses of Long Range Acoustic Device ("LRAD") against perceived "group" for crowd control purposes, including *Monell* allegations challenging many of the same policies and practices herein, see, e.g., First Amendment Complaint at Paragraph 415).

***The NYPD's Failure to Train Regarding Protest Policing***

38

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

212. Since at least the 1990s, the NYPD had failed to appropriately train its officers on the proper handling of First Amendment assemblies, despite being on notice of serious constitutional deficiencies in their existing training.

213. In fact, the NYPD's core training related to protest response to this day is based on crowd management and disorder control tactics for policing large-scale civil disorder and riots.

214. In 1997, the NYPD's Disorder Control Unit ("DCU") created the "Disorder Control Guidelines."

215. Upon information and belief, to this day, that documents forms the core the NYPD protest response-related training.

216. The Disorder Control Guidelines treat disorders as military engagements and copies military tactics and focus on tactics designed to deter, disperse, and demoralize groups, including by staging overwhelming presence and force at protest activity, as well as making early and "proactive" arrests, and mass arrests, using disorder control formations, encirclement or kettling, and other, similar tactics.

217. Upon information and belief, the core NYPD training, based on the Disorder Control Guidelines, focuses on the use of such tactics to – (using the training's terminology) "disperse and demoralize" protestors.

218. These disperse and demoralize tactics and trainings have persisted through the present including on June 4, 2020 in Mott Haven as exemplified by the experiences of Jones,

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

Williams, Roman, and other protestors who attended said protest and those of others in the summer of 2020. [12]

219.    Upon information and belief, the Disorder Control Guidelines were never meant to be guidelines for the policing of lawful First Amendment assemblies such as demonstrations – only for large-scale civil disorder such as riots.

220.    However, neither the Disorder Control Guidelines, nor upon information and belief, any related NYPD training, contain meaningful direction on the core First, Fourth, or Fourteenth Amendment principles that must guide constitutional policing of First Amendment assemblies.

221.    On information and belief, there was, and is, virtually no NYPD training – and certainly no meaningful NYPD training – focusing on how to utilize the tactics described in the Disorder Control Guidelines without infringing on the constitutional rights of protestors, such as how to make probable cause determinations or the requirements of providing an alternative avenue of protest, meaningful time and a path of egress when issuing a dispersal order, use of force to make arrests, issuance of summons, issue of flex cuffs, mass arrests, and the like.

---

[12] *See*, NYPD Responsible Investigation, New York State Officer of the Attorney General, Preliminary Report on Investigation into NYPD interaction with protestors, archive of written testimony incorporated herein by reference.

40

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

222.  Defendants' failures to train, supervise and/or retrain lead to violations of Plaintiff's

rights in this case, include, inter alia, the following:

a)  The failure to provide constitutionally meaningful dispersal disorders and opportunities to disperse or other, similar fair warning prior to using force or taking other enforcement action, including, for example, the manner in which to inform demonstrators they must move or disperse, how many warnings to give before taking enforcement action, the length of time to be given in order to provide a meaningful opportunity to comply and the like;

b)  The failure to make clear the need for individualized probable cause to arrest in a protest context;

c)  The need failure to provide training on the needs for fair warning and a meaningful opportunity to comply with police directions as a prerequisite for probable cause to arrest for a Curfew Order violation;

d)  The failure to provide training on the use of reasonable and proportionate force in connecting with policing First Amendment assemblies;

e)  The failure to provide training with regard to the proper application and removal of flex-cuffs, including how to measure the appropriate tension on flex cuffs; how to assess the need to remove flex-cuffs; how long flex-cuffs may be worn before a significant risk of nerve damage develops; the safest types of removal equipment to use and how to use removal equipment properly so as not to accidentally tighten flex-cuffs further in the process of removal; providing officers with necessary tools to remove or loosen flex-cuffs.

f)  The failure to provide training on the importance and need for NYPD members to wear masks during the COVID-19 pandemic, to provide masks for arrestees, and to allow arrestees to engage in mask-wearing, social distancing, handwashing, and other similar safety measures in light of the COVID-19 pandemic.

g)  The duty to intervene, stop, mitigate, and report officers who use excessive force while policing said event.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

h)  The failure to provide training in de-escalation techniques. [13]

i)  The duty not to use excessive or unnecessary force.

223.    Although many of the above problems with the NYPD's training are endemic and cut across all of the relevant NYPD training, at present, defendant City has a policy and practice of deploying one particularly problematic, inadequately trained, poorly supervised and disciplined group of NYPD members: the NYPD's Strategic Response Group ("SRG").

224.    The SRG, deployed around the City at protests in 2020 including those that are the subject of this lawsuit, was created in 2015 as a specialized unit tasked with responding to disorder-causing events and to conduct counter-terrorism operations.

225.    The SRG has a unit in each of the five boroughs and the DCU has now been incorporated into the SRG.

226.    In response to the public's skepticism that the SRG would be used to crack down on protests, then- Chief of Department James O'Neill stated: "They will not be involved handling protests and demonstrations. They'll have no role in protests. Their response is single-fold. They'll be doing counter-terror work. They'll be assigned to different posts throughout the city." [14]

---

[13] See 2015 NYPD Office of Inspection General Report finding that NYPD use of force policy is vague and imprecise and provides insufficient instruction on de-escalation.
[14] Ben Yakas, NYPD: Fine, Maybe We Won't Police Protests With Machine Guns, Gothamist, Jan. 30, 2015, available at https://gothamist.com/news/nypd-fine-maybe-we-wont-police-protests-with-machine-guns.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

227.   However, since 2015, the SRG has been regularly deployed at protests, including those in 2020 related to the present lawsuit.

228.   Upon information and belief, SRG members, including many of those deployed to the protests in 2020 that are the subject of this lawsuit, have histories of engaging in the kinds of misconduct complained of herein, documented among other places, by CCRB complaints, and in numerous lawsuits. [15]

229.   SRG members are meant to have additional DCU training.

230.   Upon information and belief, that additional DCU training is principally modelled on the core principles and tactics in the Disorder Control Guidelines.

231.   However, upon information and belief, many of the officers deployed to respond to the protests in 2020, including Mott Haven, did not even receive that training, which was supposedly required of them.

232.   As a result, as noted in the OCC Report, "for a majority of the officers who were assigned to the George Floyd protests, their training on policing protests was limited to what they had received in the Academy. [16]

---

[15] Ali Winston, NYPD Unit at Center Of Protest Policing Has Dozens Of Officers With Long Misconduct Histories, The Appeal, Oct. 15, 2020, available at https://theappeal.org/nypd-srg-misconduct/.
[16] OCC Report at 37.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

233.    Between at least 2004 and the present, the NYPD's mass arrest and violent crowd control

and protest policing tactics have been on full display in the streets of New York City; the

subjects of unfavorable coverage in the media, including coverage explicitly showing video

evidence of NYPD members engaging in uses of excessive force in connection with crowd

control while policing protests; documented in complaints to the Civilian Complaint Review

Board and other agencies; as well as the litigations discussed above, which have cost the city

tens of millions of dollars in judgements and settlements.

234.    Indeed, in connection with the 2002 World Economic Forum and the 2004 RNC policing

operations, NYPD supervisors – including DCU supervisors charged with designing and

implementing NYPD protest policing-related policies and related training – routinely created

"after action reports" that documented and critiqued NYPD plans for and responses to protest

activities.

235.    For example, in an March 17, 2006 New York Times article that was published while

discovery about related policies and practices was ongoing in the 2004 RNC litigations,

"Police Memos Say Arrest Tactics Calmed Protest," Jim Dawyer reported on the revelation

of 2002 WEF after-actions reports in then-ongoing litigation, *Allen v. City of New York*, 03-

cv-2829 (KMW) (GWG) (SDNY). [17]

---

[17] Jim Dwyer, "Police Memos Say Arrest Tactics Calmed Protest, "N.Y. Times, March 17, 2006,
available at https://www.nytimes.com/2006/03/17/nyregion/police-memos-say-arrest-tactics-
calmed-protst.html.

44

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

236.    Those reports praised employing militarized tactics such as the "staging of massive amounts" of officers in riot gear including riot helmets and militarized "equipment" such as armored vehicles, prisoner wagons, and buses in view of demonstrations in order to "cause them to be alarmed" and as a "deterrent" as well as the use of "proactive" arrests in order to have a "powerful psychological effect" on protestors.

237.    After the 2002 WEF after-action reports were disclosed in Allen and the 2004 RNC-related after-action reports were disclosed in the RNC litigations, and some of them were made public as a result, upon information and belief, the NYPD opted to discontinue creating such reports, documented and assessed the NYPD's protest policing-related policies and tactics.

238.    Upon information and belief, according to the Corporation Counsel's report, NYPD records do not show any protest-related after action reviews undertaken between the 2004 Republican National Convention until the events of the George Floyd protests.

239.    Nevertheless, upon information and belief, at prior to and during the summer of 2020 protests, Shea, Monahan, Lehr and other defendant City policymakers would routinely receive reports regarding arrests made in connections with First Amendment assemblies.

240.    Said "internal reports" including but not limited to: Unusual Occurrence Reports; Mass Arrest Reports including data tracking arrestees, the length of time it took them to go through the system, whether they were released with a summons or DAT, their proposed arrest charges, and other information related to the status and/or dispositions of the cases; internal

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM    INDEX NO. 811888/2021E
NYSCEF DOC. NO. 1                                RECEIVED NYSCEF: 09/01/2021

critiques from supervisors and other officers involved in mass arrests related to police actions

taken in relation to an event; and/or other reports including information arrests, use of force

protest arrest processing, and/or prosecutions.

241.    Despite the wealth of evidence of NYPD members' historical brutality against protestors,

defendant City has ignored, and/or failed to utilize relevant information, including

information gleaned from complaints, investigations, news coverage reports and lawsuits, as

well as other data points, to identify deficiencies in NYPD training as it related to

constitutionally complaint protest policing, and policing in general such as de-escalation

techniques and proper use of force.

242.    For example, in a deposition in *Packard v. City of New York*, 15-cv-7130 (S.D.N.Y.)

(AT), a witness for the City of New York testified that in regard to protest police training it

did not review (i) decline to prosecute decisions, (ii) conviction conversation rates or (iii)

allegations and settlements in lawsuits relating to protests.

243.    As another example, defendant City apparently does not take allegations in lawsuits filed

by protestors claiming they were falsely arrested during protests into account in considering

its protest policing-related polices and training, in effect taking the position that there is

nothing to be learned from lawsuits and settlements.

244.    For example, in a 2017 deposition, a Fed. R. Civ. P. 30(b) (6) witness designated to

testify on sidewalk policy protesting, dispersal orders, and training on probable cause

standards for crimes commonly charged in protest policing by the defendant City could

46

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

identify no impact that litigation against City between 2000 and 2011 had on defendant City's relevant polices, practices, customs, or NYPD training.

245.   Relatedly, according to the Corporation Counsel, "the NYPD does not demonstrate a consistent commitment to reviewing and responding to external critiques regarding the policing of protests." [18]

246.   At bottom, the NYPD's near-exclusive focus on deterring, dispersing, and demoralizing in trainings related to policing protests, coupled with the failure to train on specific, relevant aspects of constitutional policing of protests, let alone how to encourage or facilitate protests-despite having received clear notice that NYPD policing of protests has caused the systemic violations of protestors' constitutional rights for years – demonstrates both a history and a policy, of disregard for the First Amendment, Fourth Amendment, Fourteenth Amendment, and other related rights of Plaintiffs and other  similarity injured protestors.

### The NYPD's Policy and/or Practice of Using Excessive Force to Control the Speech of Protestors

247.   Defendants used types and levels of force that were excessive and unnecessary force against the Plaintiffs and other similarity situated protestors.

248.   In many cases, those uses of force were in contravention of, or inconsistent with, related, written NYPD polices and/or training.

---

[18] OCC Reports at 2, 30.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

249.  Upon information and belief in many cases, defendants failed to document, and/or require
      that fellow defendants and/or fellow officers' document, uses of force in accordance with
      related NYPD policies and/or training.

250.  Further, upon information and belief, the defendants used force against plaintiffs based
      on their position in or proximity to a perceived group, without first having given the
      perceived group clearly communicated prior notice as well as a meaningful opportunity to
      comply with police orders and/or dissociate with the perceived group.

251.  Defendants used types of force, such as deploying pepper spray or mace, that they knew,
      or should have known, would impact numerous people at one time, and/or cause lasting pain,
      suffering, and/or injury, without making individualized or otherwise appropriate
      determinations about whether those uses of force were necessary, justified, or reasonable
      under the circumstances.

252.  Additionally, Plaintiffs and others arrested at the protest that are the subjects of this
      litigation were handcuffed with their wrists together and their hands behind their back with
      plastic flex-cuffs for hours.

253.  In many cases, Plaintiffs and/or other arrestees complained about the fact that their flex-
      cuffs were too tight causing them pain and/or causing them injury.

254.  Specifically, because they were arrested at a protest, Plaintiffs were subjected to tight and
      extensive time being held in flex-cuffs pursuant to defendant's Protest Arrest Processing
      Policies. Defendant City did not supply defendants with enough of cutting tools with which

48

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

to loosen or remove flex-cuffs, or any flex-cuffs pads, which are designed to prevent the very types of injuries Plaintiffs and other arrestees suffered as a result of having flex-cuffs applied to them.

255.   It was no secret to defendants that using flex-cuffs to restrain protestors- including without providing adequate numbers of cutting tools or any protective padding – would result in injuries to protestors, of the sort that appropriate policies, training, and/or supervision would have been avoided.

256.   For example, *Burley v. City of New York*, 03-cv-2915 (WHP) (FM) 2005 WL 668789 (S.D.N.Y. March 23, 2005) was a class action arising from mass arrests of over 200 demonstrators during 2002 WEF in New York City challenging, *inter alia,* the NYPD's then-policy and practice of using plastic flex cuffs as "unreasonable and excessive because of the manner in which the handcuffs were applied and the length of time for plaintiffs were handcuffed."

257.   Plaintiffs in *Kunstler v. City of New York*, 04-cv-1145 (RWS)(MHD) (S.D.N.Y.) and other related cases arising from alleged false and retaliatory arrests in connection with police responses to protests on April 7, 2003, also raised *Monell* claims around NYPD members' use of extremely tight, plastic handcuffs.

258.   Additionally, in *McNamara v. City of New York*, 04-cv-9216 (RJS) (JCF) (S.D.N.Y.), the Court certified a "Conditions of Confinement Class, comprising all RNC arrestees who were

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

handcuffed with plastic flex cuffs." *See McNamara v. City of New York*, 275 F.R.D 125, 154 (S.D.N.Y. 2011)

259.   Those cases, and many others, challenged the City's and NYPD's policies and practices regarding the use of flex-cuffs to restrain protestors, and put the defendants in this case on notice of the potential for injury and harm suffered when the flex cuffs are applied improperly, and for too long a period of time.

260.   Relatedly, the DOI Report found, "When voicing those concerns to their arresting officers or other officers in the area, arrestees were told that the officers lacked the necessary equipment to remove the flex-cuffs. Arrestees therefore had to wait, oftentimes for long periods, until they got to their respective arrest processing center so that flex-cuffs could be removed." [19]

***Defendants' Policies and Practices Regarding Arrests – Including Mass Arrests – Without Fair Warning – Or an Opportunity to Comply***

261.   As set forth in this complaint the NYPD used a tactic known as kettling to surround, trap and prevent movement by the protestors from leaving the "kettle" area.

262.   The defendants had used these tactics at prior protests as well.

263.   Not only didn't the defendants allow the protestors to leave the kettled area prior to the 8:00 p.m. curfew, but they also failed to give constitutionally meaningful and adequate

---

[19] *See, e.g.*, DOI Report at 42. See also, AG Report at 29 ("Officers kept the [flex-cuffs] on their wrists even after they were placed in cells, which, for some, cut off their circulation or caused other injuries to their wrists, including cuts and nerve damage.")

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811868/2021E
RECEIVED NYSCEF: 09/01/2021

dispersal orders and meaningful opportunities to disperse prior to making arrests where such

notice and opportunity were required.

264.    As a result, most of the protestors at Mott Haven (and in other protests which preceded it)

were arrested in connection with perceived violations of Mayor de Blasio's Curfew Orders,

or for perceived violations of New York Penal Law 240.20(6) (Disorderly Conduct – Failure

to Obey Lawful Dispersal Order), yet defendants failed to give constitutionally meaningful

and adequate dispersal order and meaningful opportunities to disperse prior to making such

arrests, and/or ensure that each such arrested Plaintiff had the state of mind required for such

arrest.

265.    With respect to de Blasio's Curfew Orders, the plain language of de Blasio's Curfew

Orders required both (a) a knowing violation of the Executive Order prior to any arrest and

(b) that any arrest could only follow a dispersal order, a meaningful opportunity to disperse,

and a person's refusal to comply with the order.

266.    As plead elsewhere herein, defendants enforced the Curfew Orders by arresting Plaintiffs

and other protestors without first ensuring that they had been given dispersal orders,

meaningful opportunities to disperse, and that their refusal to comply was either knowing or

voluntary. In sum protestors were arrested under circumstances in which the defendants had

not ensured that arrestees had knowingly violated the Curfew Orders.

267.    That enforcement was consistent with official NYPD policy, or at a minimal was treated

with deliberate indifference

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

268.   The defendants' acted with a policy, custom or pattern of trapping protestors prior to curfew and then enforcing said curfew by arresting those who were trapped and not permitted to leave.

269.   The defendant City was deliberating indifferent to this aforesaid practice, and despite knowing that if was occurring, took no steps to stop it from continuing.

### *Retention Of "Bad Officers"*

270.   The "City" knew of the widespread use of excessive force by its police force prior to on June 4, 2020 yet continued to employ and promote its officers without any discipline, meaningful retraining oversight or consequences for their bad acts or actions, including the defendants herein.

271.   This practice of retention of "bad" officers was not unique to Wilson, Zaino, or the other defendants, but was a practice adopted by the defendant City and/or NYPD, and/or was treated with deliberate indifference by the City and/or NYPD.

272.   In a New York Times article published November 15, 2020 titled A Watchdog Accused Officers of Serious Misconduct: Few were Punished, by Ashley Southall, Ali Watkins and Blacki Miglozzi[20], it reported that of the 6,900 misconduct charges recommended by the CCRB in which the highest level of discipline was recommend, the NYPD ignored 71% of the recommendations and routinely downgraded the charges. This included the nullification

---

[20] https://www.nytimes.com/2020/11/15/nyregion/ccrb-nyc-police-misconduct.html

52

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

or downgrading 26 of the 28 recommended cases since the current police commissioner,

Dermot Shea has been in charge of the NYPD.

273.    The Times article found after reviewing charges brought against 3,188 officers, that the

Police Department followed the Review Board's recommendations less than 20 percent of

the time; that fewer than one in five officers received punishment ranging in severity from 1

lost day vacation to 12 months of dismissal probation; that just seven officers were fired (and

only after being convicted of a crime in court); and that many officers had multiple findings

against them, but continued to be promoted.

274.    It is in this atmosphere, which was created, permitted or acted upon with deliberate

indifference by the City, which allowed the constitutional violations of plaintiffs to occur and

permitted the defendant officers to act with impunity at the Mott Haven protest.[21]

### Defendant's Protest Arrest Processing Policies and Practices

275.    Defendants arrested Roman for alleged offenses which New York Criminal Procedure

Law 150.20 required then to grant Roman summonses on the street in lieu of a fuller or

---

[21] In an article published in NOVA, Study finds misconduct spreads among police officers like, contagion, by Katherine Wu, 5/27/19 (https://www.pbs.org/wgbh/nova/article/police-misconduct-peer-effects/), it cites research reported in the Journal Nature Human Behavior, Edika G. Quispe-Torreblanca and Neil Stewart, Causal peer effects in police misconduct, Nature Human Behavior, Vol 3, August 2019, 797-807, https://www.nature.com/articles/s41562-019-0612-8.epdf, that found retaining misbehaving police officers increased the likelihood that those around them would be accused of bad behavior as well. Therefore, transferring bad behavioral officers to other units, or engaging of in a code of silence could impair the integrity of "law abiding" officers and feed also spread improper police practices.

53

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

lengthier detention; and/or in connection with which, under the NPYD policies and practices that are applied in non-protest contexts, arrestees are taken directly to a nearby local precinct, and released in an average of between around two and four hours with a summons.

276.    However, because defendants arrested Roman and other arrestees in connection with a protest, defendants subjected him and them to defendants' Protest Arrest Processing Policies, which involved, among other components, placing Roman and other arrestees in flex-cuffs and removing them from the street to a centralized arrest processing location such as a Mass Arrest Processing Center ("MAPC"), where defendants subject them to a large scale arrest processing procedures and Mass Arrest Processing Plan ("MAPP") rather than issuing them summonses, and releasing them from custody, on the street.

277.    Additionally, as a result, instead of detaining Roman and other arrestees for a relatively brief period of time on the street, issuing them summonses, and releasing them, defendants subjected Roman and others to flex-cuffing as well as unreasonably lengthy, onerous arrest processing, significantly increasing the amount of time they would otherwise have been in custody and exposing them to inappropriate and especially hazardous conditions of confinement, as well as searches of their persons and property, and/or seizures and/or retentions of their property without adequate pre- or post-deprivation notice and/or opportunity to be heard to challenge the grounds for seizing and/or retaining the property.

278.    In some cases, NYPD members destroyed and/or damaged property belonging to Plaintiffs and other arrestees.

54

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

279.   In other cases, NYPD members seized and retained property from Plaintiffs and other arrestees without providing them with the NYPD paperwork required by NYPD policies, practices, and procedures to retrieve property was closed.

280.   In still other cases, NYPD members seized and retained property without providing Plaintiffs with a meaningful opportunity to retrieve it, for example because the location at which defendants were retaining the property was closed.

281.   The conditions of confinement were unsafe and overcrowded, particularly in the context of the COVID-19 pandemic, and/or filthy and/or unsanitary; and lacked appropriate access to phone calls, food, water, bathrooms soap and/or hand sanitizer, other hygienic products such as tampons, and/or other basic necessities.

282.   With particular respect to the COVID-19 pandemic, during Plaintiffs' confinements, the State of New York and defendant City, had advised people to comply with social distancing, to wear masks, and to engage in practices such as hand-washing; and defendant City, as well as defendants Shea, Monahan, Lehr and other NYPD members, enforced Executive Orders issues by Mayor de Blasio requiring people to engage in social distancing and/or mask-wearing, all on an emergency basis.

283.   However, as part of defendants' Protest Arrest Processing Policies and MAPP, instead of detaining Roman and other arrestees for a relatively brief period of time on the street, issuing them summonses, and releasing them, defendants transported Plaintiffs to a MAPC or other

55

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

centralized arrest processing location, in close, forced proximity to other arrestees and NYPD members, many of whom were not wearing masks, rendering social distancing impossible.

284.    Relatedly, many defendants and other nearby NYPD members were not wearing masks while arresting and/or using force on and/or detaining plaintiffs.

285.    Also relatedly, defendants and other NYPD members removed masks of many plaintiffs and other arrestees who had masks at one point prior to a during their arrest or detentions.

286.    Also as part of defendants' Protest Arrest Processing Policies and MAPP, defendants subjected plaintiffs and other arrestees to conditions of confinement in which they were unable to wash their hands or otherwise engage in other, similar hygienic practices that the State and City were recommending for public health and safety.

287.    Defendants knew or should have known that, as a result of subjecting plaintiffs and other arrested to defendants'' Protest Arrest Processing Polices and MAPP, they would deprive Plaintiffs and other arrestees of basic needs, including for example the need to stay safe from COVID-19, as well as unreasonable risks of serious damage to their physical and/or mental health or safety through potential exposure to COVID-19.

288.    Defendants acted intentionally to impose those conditions because they subjected plaintiffs and other arrestees to defendants' Protest Arrest Processing Policies and MAPP.

289.    Additionally, defendants recklessly failed to act with reasonable care to mitigate the risks that they conditions posed even though they knew or should have knew that they posed

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

excessive risks to Plaintiffs' physical and/or mental health or safety through potential

exposure to COVID-19.

### Defendants' Failure to Monitor and Supervise NYPD Members' Protest Policing

290.   Although defendants City, Shea, Monahan, Lehr and other policymakers actually knew,

or should have known, that NYPD members were engaging in or had engaged in the

unconstitutional conduct complained of herein, they failed to monitor, supervise, and/or

discipline NYPD members who directed, engaged, or observed such conduct.

291.   For example, despite statements made by Mayor de Blasio and Commissioner Shea in the

media indicating they had knowledge of events related to violence and mass arrests at the

protests as they were unfolding, and the wealth of video and other evidence that has been

widely available in their intervening months, upon information and belief, virtually no NYPD

members have need meaningfully investigated or disciplined related to their conduct.

### Reports and Investigations in the 2020 Protests

292.   In July 2020, the New York State Office of the Attorney General ("the AG") issued a

preliminary report on the NYPD's response to the May and June protests ("the AG

Report").[22]

---

[22] New York State Office of the Attorney General, Preliminary Report on the New York City
Police Department's Response to the Demonstrations Following the Death of George Floyd,
("AG Report"), July 2020, available at http://ag.ny.gov/sites/default/files/2020-nypd-report.pdf.
The Plaintiffs herein incorporate by reference into this case the facts set forth in the AG Report.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

293.    The AG Report found that most complaints received by the AG were allegations of excessive force, kettling, false arrests, and excessive force against protestors as well as similar misconduct directed at the press, National Lawyers Guild – New York City Chapter Legal Observers, elected officials, and essential workers.

294.    The AG Report also found the pervasive use and misuse of tightly fastened flex-cuffs during arrest, NYPD officials covering their badge numbers, and failure of NYPD officers to wear protective face coverings to protect themselves and others against the spread of COVID-19.

295.    In December of 2020, the NYC Department of Investigation issued a report examining the NYPD's conduct in response to the 2020 Black Lives Matter protests ("DOI Report").[23]

296.    The DOI Report found, inter alia, that the NYPD lacked a sufficiently tailored strategy to respond to protests, used force and tactics of crowd control that led to excessive force and "heightened tensions," made decisions based on intelligence that lacked "context or proportionality," and deployed officers who lacked sufficient training in responding to protests.[24]

297.    In addition to noting the heavy-handed response by the SRG at the 2020 protests, the DOI Report found that officers not from SRG lacked "any recent training related to protests."[25]

---

[23] *See*, DOI Report, *supra*.
[24] *Id.* at 36.
[25] *Id.* at 61.

58

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

298.    The DOI found that NYPD policies do not have specific First Amendment protest expression policing and failed to distinguish polices for serious civil disorders and riots from those applicable to peaceful First Amendment expression.

299.    The DOI distinguished between protest facilitation and protest control, regulation, or suppression.

300.    The former is preferred to allow for First Amendment expression, the DOI Report found, but the NYPD employed protest control during the 2020 protests.

301.    According to the DOI Report, between May 28 and June 5, 2020, approximately 2,047 individuals were arrested during demonstrations.[26]

302.    The DOI also found that Black arrestees were disproportionately charged with felonies.[27]

303.    The DOI also found that "the force required to carry out a mass arrest was disproportionate to the identified threat," and "placed the burden of potential crime on a wide swatch of people who had no apparent connections to that potential criminal activity.[28]

304.    According to the DOI Report, between May 28 and June 20, 2020, the CCRB had received 1,646 protest-related allegations related to 248 incidents.[29]

305.    In September of 2020, Human Rights Watch issued a detailed analysis of the Mott Haven protest ("the HRW Report") describing the preplanned and coordinated disruption of the

---

[26] Id. at 26.
[27] Id. at 27.
[28] DOI Report at 56.
[29] Id. at 28.

59

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

march by the NYPD, including by Chief Monahan, who was present at the NYPD mobilization.[30]

306.    The HRW Report describes the systematic kettling of protestors in Mott Haven before the 8:00 p.m. curfew and the subsequent excessive force and mass arrest of the marchers, including National Lawyers Guild – New York City Chapter Legal Observes, as well as medics, all of whom were classified as essential workers exempt from the Mayor's Curfew Orders.

307.    Notwithstanding these reports condemning the conduct of the NYPD, following the Mott Haven protest, Defendant Shea ratified the misconduct that occurred when he said the mobilization by the NYPD in Mott Haven was "executed nearly flawlessly." [31]

308.    Defendant City and NYPD leadership and policymakers knew the department and its officers had problems with constitutionally policing protests but failed to adequately train and otherwise prepare its officers to respond to the 2020 protests, prevent its officers from committing the same acts of misconduct, or discipline officers who engaged in such misconduct.

---

[30] Human Rights Watch, "Kettling" Protestors In The Bronx: Systemic Police Brutality And Its Costs In The United States ("HRW Report"), Sept. 2020, available at https://www.hrw.org/report/2020/09/30/kettling-protestors-bronx/systemic-police-brutality-and-its-costs-united-states.
[31] "NYPD's Ambush of Peaceful Bronx Protestors Was "Executed Nearly Flawlessly," City Leaders Agree, *supra*.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

### AS AND FOR THE FIRST THROUGH THIRD CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR FALSE ARREST, PLAINTIFFS JONES, WILLIAMS, AND ROMAN ALLEGE:

309.    The Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs marked "1" through "308" with the same force and effect as if more fully and at length set forth herein.

310.    The defendants lacked probable cause or reason to have arrested Jones on June 4, 2020.

311.    Jones did not commit any crime to the point when she was stopped, seized, assaulted, battered, and arrested by the defendants.

312.    Jones' arrest was unlawful.

313.    That by reason of the aforesaid false arrest Jones was injured and subjected to great indignity, humiliation, pain and great distress of mind and body, and Jones has been otherwise damaged.

314.    That by reason of the aforesaid, Jones has been damaged in a sum in excess of the jurisdictional limit of the lower courts.

315.    The defendants lacked probable cause or reason to have arrested Williams on June 4, 2020.

316.    Williams did not commit any crime to the point when she was stopped, seized, assaulted, battered, and arrested by the defendants.

317.    Williams' arrest was unlawful.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

318.   That by reason of the aforesaid false arrest Williams was injured and subjected to great indignity, humiliation, pain and great distress of mind and body, and Williams has been otherwise damaged.

319.   That by reason of the aforesaid, Williams has been damaged in a sum in excess of the jurisdictional limit of the lower courts.

320.   The defendants lacked probable cause or reason to have arrested Roman on June 4, 2020.

321.   Roman did not commit any crime to the point when he was stopped, seized, assaulted, battered, and arrested by the defendants.

322.   Roman's arrest was unlawful.

323.   That by reason of the aforesaid false arrest Roman was injured and subjected to great indignity, humiliation, pain and great distress of mind and body, and Roman has been otherwise damaged.

324.   That by reason of the aforesaid, Roman has been damaged in a sum in excess of the jurisdictional limit of the lower courts.

## AS AND FOR THE FOURTH THROUGH SIXTH CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR FALSE IMPRISONMENT, JONES, WILLIAMS, AND ROMAN ALLEGE:

325.   The Plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs marked "1" through "324" with the same force and effect as if more fully and at length set forth herein.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

326. The defendants lacked probable cause or reason to have arrested and imprisoned Jones on June 4, 2020, at approximately 7:50 p.m.

327. That said false imprisonment of Jones continued through June 5, 2020 at approximately 2:00 a.m. when Jones was released.

328. That at all times Jones was conscious of her imprisonment, did not consent to the imprisonment, and said imprisonment was unlawful.

329. That by reason of the aforesaid false imprisonment Jones was injured and subjected to great indignity, humiliation, pain and great distress of mind and body, and the said plaintiff has been otherwise damaged.

330. That by reason of the aforesaid, Jones has been damaged in a sum exceeding the jurisdictional limit of the lower courts.

331. The defendants lacked probable cause or reason to have arrested and imprisoned Williams on June 4, 2020, at approximately 7:50 p.m.

332. That said false imprisonment of Williams continued through June 4, 2020 at approximately 9:00 p.m. when Williams was released from police custody and taken by ambulance to Lincoln Hospital.

333. That at all times Williams was conscious of the imprisonment, did not consent to the imprisonment, and said imprisonment was unlawful.

63

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811868/2021E

RECEIVED NYSCEF: 09/01/2021

334.   That by reason of the aforesaid false imprisonment Williams was injured and subjected to great indignity, humiliation, pain and great distress of mind and body, and the said plaintiff has been otherwise damaged.

335.   That by reason of the aforesaid, Williams has been damaged in a sum exceeding the jurisdictional limit of the lower courts.

336.   The defendants lacked probable cause or reason to have arrested and imprisoned Roman on June 4, 2020, at approximately 8:00 p.m.

337.   That said false imprisonment of Roman continued through June 5, 2020, at approximately 6:00 a.m. when Roman was released.

338.   That at all times Roman was conscious of the imprisonment, did not consent to the imprisonment, and said imprisonment was unlawful.

339.   That by reason of the aforesaid false imprisonment Roman was injured and subjected to great indignity, humiliation, pain and great distress of mind and body, and the said plaintiff has been otherwise damaged.

340.   That by reason of the aforesaid, Roman has been damaged in a sum exceeding the jurisdictional limit of the lower courts.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

### AS AND FOR THE SEVENTH THROUGH NINTH CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR ASSAULT AND BATTERY, PLAINTIFFS JONES, WILLIAMS, AND ROMAN ALLEGE:

341.    The plaintiffs repeat, reiterate, and reallege each and every allegation contained in paragraphs marked "1" through "340" with the same force and effect as if more fully and at length set forth herein.

342.    On June 4, 2020 at approximately 7:50 p.m. Jones was violently seized, grabbed, choked, thrown to the ground, kneed, straddled, handcuffed, arrested and later fingerprinted, searched and touched by the defendants in a manner that was not privileged, was offensive to the plaintiff, was without the plaintiff's permission or consent and not authorized by law.

343.    That said acts and actions by the defendants constitute an assault and battery of Jones' person, causing her physical and emotional harm.

344.    That by reason of the aforesaid assault and battery, Jones was injured and subjected to great indignity, humiliation, pain and great distress of mind and body, and the said plaintiff has been otherwise damaged.

345.    That by reason of the aforesaid, Jones has been damaged in a sum exceeding the jurisdictional limit of the lower courts.

346.    On June 4, 2020 at approximately 7:50 p.m. Williams was tackled, seized, grabbed, thrown to the ground, kneed, straddled, hit with a baton on her head, zip tied extremely tight, searched and touched by the defendants in a manner that was not privileged, was offensive to the plaintiff, was without the plaintiff's permission or consent and not authorized by law.

65

**FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM**

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

347.  That said acts and actions by the defendants constitute an assault and battery of Williams' person, causing her physical and emotional harm.

348.  That by reason of the aforesaid assault and battery, Williams was injured and subjected to great indignity, humiliation, pain and great distress of mind and body, and the said plaintiff has been otherwise damaged.

349.  That by reason of the aforesaid, Williams has been damaged in a sum exceeding the jurisdictional limit of the lower courts.

350.  On June 4, 2020 commencing at approximately 8:00 p.m. Roman was struck with a baton, seized, grabbed, violently thrown to the ground, kneed, straddled, repeatedly tightly zip tied, fingerprinted, searched and touched by the defendants in a manner that was not privileged, was offensive to the plaintiff, was without the plaintiff's permission or consent and not authorized by law.

351.  That said acts and actions by the defendants constitute an assault and battery of Roman's person, causing him physical and emotional harm.

352.  That by reason of the aforesaid assault and battery, Roman was injured and subjected to great indignity, humiliation, pain and great distress of mind and body, and the said plaintiff has been otherwise damaged.

353.  That by reason of the aforesaid, Roman has been damaged in a sum exceeding the jurisdictional limit of the lower courts.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

## AS AND FOR THE TENTH THROUGH TWELFTH CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR EXCESSIVE USE OF FORCE, PLAINTIFFS JONES, WILLIAMS, AND ROMAN ALLEGE:

354.   The Plaintiffs, Jones, Williams, and Roman repeat, reiterate and reallege each and every allegation contained in paragraphs marked "1" through "353" with the same force and effect as if more fully and at length set forth herein.

355.   As set forth above Jones was violently seized, grabbed, choked, thrown down, straddled, kneed in her back and neck and placed in tight zip ties and touched by the defendants in a manner that was not privileged, was offensive to the plaintiff, was without the plaintiff's permission or consent and not authorized by law.

356.   Jones was not resisting arrest.

357.   That said acts and actions by the defendants towards Jones were excessive and beyond all reasonable means of force necessary that a reasonable officer would use under the same or similar circumstance.

358.   The defendants failed to utilize any de-escalation techniques prior to violently assaulting and battering Jones.

359.   The amount of force utilized by the defendants was excessive in that it was more than necessary to gain control of Jones.

360.   No officer present at the location intervened or stopped the use of excessive force.

361.   That the defendants ignored the plaintiff Jones' cries and that of civilian onlookers to stop what they were doing.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

362.   That Jones engaged in no act or actions which would justify the aforementioned use of force by the defendants against her.

363.   That by reason of the aforesaid excessive use of force, Jones was injured and subjected to great indignity, humiliation, injury, pain and great distress of mind and body, and the said plaintiff has been otherwise damaged.

364.   That by reason of the aforesaid, Jones has been damaged in a sum exceeding the jurisdictional limit of the lower courts.

365.   On June 4, 2020, at approximately 7:50 p.m. Williams was violently tackled, seized, grabbed, choked, thrown down, struck with a baton in the head, straddled and tightly zip tied and touched by the defendants in a manner that was not privileged, was offensive to the plaintiff, was without the plaintiff's permission or consent and not authorized by law.

366.   That said acts and actions by the defendants were excessive and beyond all reasonable means of force necessary that a reasonable officer would use under the same or similar circumstance.

367.   Williams was not resisting arrest.

368.   The defendants failed to utilize any de-escalation techniques prior to violently assaulting and battering Williams.

369.   The use of force utilized by the defendants was more than necessary to gain control of Williams.

68

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

370.   No officer present at the location intervened or stopped the use of excessive force, on
Williams.

371.   That Williams engaged in no act or actions which would justify the aforementioned use
of force by the defendants against her.

372.   That by reason of the aforesaid excessive use of force, Williams was injured and
subjected to great indignity, humiliation, injury, pain and great distress of mind and body,
and the said plaintiff has been otherwise damaged.

373.   That by reason of the aforesaid, Williams has been damaged in a sum exceeding the
jurisdictional limit of the lower courts.

374.   On June 4, 2020 at approximately 8:00 p.m. Roman was struck with a baton, violently
grabbed and thrown to the ground, straddled and tightly zip tied and later again purposely
tightly zip tied and touched by the defendants in a manner that was not privileged, was
offensive to the plaintiff, was without the plaintiff's permission or consent and not authorized
by law.

375.   At no time was Roman resisting arrest.

376.   That said acts and actions by the defendants were excessive and beyond all reasonable
means of force necessary that a reasonable officer would use under the same or similar
circumstance.

377.   The defendants failed to utilize any de-escalation techniques prior to violently assaulting
and battering Roman.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

378.    The use of force utilized by the defendants was more than necessary to gain control of
Roman.

379.    No officer present at the location intervened or stopped the use of excessive force.

380.    That the plaintiff engaged in no act or actions which would justify the aforementioned
use of force by the defendants against Roman.

381.    That by reason of the aforesaid excessive use of force, Roman was injured and subjected
to great indignity, humiliation, injury, pain and great distress of mind and body, and the said
plaintiff has been otherwise damaged.

382.    That by reason of the aforesaid, Roman has been damaged in a sum exceeding the
jurisdictional limit of the lower courts.

## AS AND FOR THE THIRTEENTH THROUGH FIFTEENTH CAUSES OF ACTION ON BEHALF OF THE PLAINTIFFS JONES, WILLIAMS, AND ROMAN AGAINST ALL DEFENDANTS FOR FAILING TO INTERVENE, MITIGATE OR STOP

383.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in paragraphs
marked "1" through "382" with the same force and affect as if more fully and at length set
forth herein.

384.    Upon information and belief, the named defendant "officers" were in the immediate
vicinity of Jones at the "location" at the time when Jones was assaulted, battered, subjected
to excessive force and falsely arrested. The defendant failed to take any steps to stop,
prevent, or mitigate the harm to Jones.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

385.   Upon information and belief, defendants were under a duty to act yet failed to do so when Jones was assaulted, battered, subjected to excessive force, and falsely arrested.

386.   That the above acts committed by the defendants constituted a failure to intervene, proximately causing or contributing to the physical and emotional harm endured by Jones.

387.   That by reason of the aforesaid, Jones has been damaged in a sum exceeding the jurisdictional limits of lower courts.

388.   Upon information and belief, the named defendant "officers" were in the immediate vicinity of Williams at the "location" at the time when Williams was assaulted, battered, subjected to excessive force and falsely arrested, and took no action to stop, intervene, and mitigate such actions from occurring.

389.   Upon information and belief, defendants were under a duty to act yet failed to do so when Williams was assaulted, battered, subjected to excessive force, and falsely arrested.

390.   That the above acts committed by the defendants constituted a failure to intervene, proximately causing or contributing to the physical and emotional harm endured by Williams.

391.   That by reason of the aforesaid, Williams has been damaged in a sum exceeding the jurisdictional limits of lower courts.

392.   Upon information and belief, the named defendant "officers" were in the immediate vicinity of Roman at the "location" at the time when Roman was assaulted, battered,

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

subjected to excessive force and falsely arrested, and took no action to stop, intervene, and mitigate such actions from occurring.

393.    Upon information and belief, defendants were under a duty to act yet failed to do so when Roman was assaulted, battered, subjected to excessive force, and falsely arrested.

394.    That the above acts committed by the defendants constituted a failure to intervene, proximately causing or contributing to the physical and emotional harm endured by Roman.

395.    That by reason of the aforesaid, Roman has been damaged in a sum exceeding the jurisdictional limits of lower courts.

### AS AND FOR THE SIXTEENTH THROUGH EIGHTEENTH CAUSES OF ACTION ON BEHALF OF THE PLAINTIFFS JONES, WILLIAMS, AND ROMAN AGAINST THE "CITY" FOR NEGLIGENCE

396.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in paragraphs marked "1" through "395" with the same force and affect as if more fully and at length set forth herein.

397.    That the defendant, "City" was careless and reckless in hiring, retaining, training, assigning, supervising, monitoring, observing, disciplining and promoting, as and for its employees, the named defendants "officers" in this action, in that said employee(s), individually or collectively, lacked the experience, deportment and ability to be employed by the defendants in the capacity in which they were utilized, i.e. as police officers and/or in supervisors roles.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

398.   That, upon information and belief, the defendant, "City" failed to exercise due care and caution in its hiring and promoting practices. Upon information and belief the defendant "City" failed to investigate the above named Officer's backgrounds; the City failed to properly train, supervise and monitor the "officers", that the city continued to retain employ and promote said officers after being placed on notice of prior acts of misconduct and the defendants, their agents, servants and employees, were otherwise careless, negligent and reckless.

399.   That each defendant "officer" while acting within the scope of his employment, was reckless or grossly negligent in that each failed to use such care in the performance of his police duties as a reasonably prudent and careful police officer would have used under similar circumstances.

400.   That each of the officers was negligent, careless and reckless in the manner in which they executed and/or performed his police duties on the date and at the location specified herein.

401.   Upon information and belief the police department permitted or condoned the false arrest, and/or false documentation submitted by these and other officers; use of force, use of excessive force, failure to intervene and/or report misconduct, and in that the defendants, their agents, servants and/or employees were otherwise careless, reckless and negligent.

402.   That the aforesaid occurrence, to wit: assault and battery, false arrest and imprisonment, and the resulting injuries to mind and body therefrom, was caused wholly and solely by

73

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

reason of the negligence of the defendants, its agents, servants and/or employees without any negligence on the part of the plaintiffs Jones, Williams, and Roman contributing thereto.

403.  That by reason of the aforesaid, Jones was injured in mind and body, still suffers and upon information and belief will continue to suffer great physical and mental pain, and she was thereby damaged.

404.  Upon information and belief, Jones expended and incurred divers sums of money in an effort to cure herself of said injuries and to extricate herself from the indignities and humiliation foisted upon him by the actions of the defendants, their agents, servants and/or employees. Upon information and belief, Jones will be required to expend further sums, and the plaintiff has been otherwise damaged.

405.  That by reason of the aforesaid, Jones has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

406.  That by reason of the aforesaid, Williams was injured in mind and body, still suffers and upon information and belief will continue to suffer great physical and mental pain, and she was thereby damaged.

407.  Upon information and belief, Williams expended and incurred divers sums of money in an effort to cure herself of said injuries and to extricate herself from the indignities and humiliation foisted upon him by the actions of the defendants, their agents, servants and/or employees. Upon information and belief, Williams will be required to expend further sums, and the plaintiff has been otherwise damaged.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

408.   That by reason of the aforesaid, Williams has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

409.   That by reason of the aforesaid, Roman was injured in mind and body, still suffers and upon information and belief will continue to suffer great physical and mental pain, and he was thereby damaged.

410.   Upon information and belief, Roman expended and incurred divers sums of money in an effort to cure himself of said injuries and to extricate himself from the indignities and humiliation foisted upon him by the actions of the defendants, their agents, servants and/or employees. Upon information and belief, Roman will be required to expend further sums, and the plaintiff has been otherwise damaged.

411.   That by reason of the aforesaid, Roman has been damaged in a sum exceeding the jurisdictional limits of the lower courts.

**AS AND FOR THE NINETEENTH THROUGH TWENTY-FIRST CAUSES OF ACTION: ALLEGING VIOLATIONS OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. SECTIONS 1983 AND 1988 AGAINST MONAHAN, LEHR, WILSON, SPERANZA, HAQUE, BURIA, ZAINO, RIVAS AND JOHN/JANE DOES #1-40 EACH IN HIS OR HER INDIVIDUAL CAPACITY AND AS AN AGENT OF THE CITY OF NEW YORK, PLAINTIFFS, WILLIAMS, JONES AND ROMAN ALLEGE:**

412.   The plaintiffs, repeat, reiterate, and reallege each and every allegation contained in paragraphs marked "1" through "415" with the same force and effect as if more fully and at length set forth herein.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

413.   That at all times hereinbefore and hereinafter mentioned, the Defendants Monahan, Lehr, Wilson, Speranza, Haque, Boria, Zaino, Rivas and John/Jane Does #1-40 herein referred as "defendant officers" were employed by the defendant The City of New York and/or The New York City Police Department and each was acting under the color of his official capacity and his or her acts were performed under the color of the policies, statutes, ordinances, rules and regulations of The City of New York.

414.   That at all times hereinbefore and hereinafter mentioned, the "defendant officers" were acting pursuant to orders and directives from defendant, the City of New York.

415.   That during at all times hereinbefore and hereinafter mentioned, the "defendant officers," individually, and/or collectively with others acted under color and pretense of law, to wit: under color of the statues, ordinances, regulations, customs and usages of The City of New York and/or New York City Police Department, and engaged in the illegal conduct set forth this complaint to the injury of the plaintiffs, Jones, Williams, and Roman and deprived them of the rights, privileges and immunities secured to each by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States and the laws of the United States, and State of New York and/or U.S.C Sections 1983.

416.   That during all times hereinafter mentioned, the "defendant officers," individually, and/or collectively with others acted under color and pretense of law, to wit: under color of statues, ordinances, regulations, customs and usages of The City of New York and/or New York City Police Department, and engaged in the illegal conduct set forth this complaint, conspired to

76

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

engage in said conduct committed upon the plaintiffs, each to the injury of the plaintiffs, Jones, Williams and/or Roman and deprived each of his or her rights, privileges and immunities secured to him or her by the Fourth and Fourteenth Amendments to the Constitution of the United States and the laws of the United States, and State of New York and/or 42 U.S.C. Section 1983.

417.    That the unlawful and illegal conduct of the" defendant officers" deprived plaintiffs Jones, Williams and Roman of the following rights, privileges and immunities secured to him or her by the Constitution of the United States and of the State of New York:

i.    The right of plaintiff to be secure in his person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States; and,

ii.   The right to equal protection under the law

iii.  The right not to be subjected to cruel and unusual punishment, including excessive force.

iv.   The right of freedom of speech and expression under the First and Fourteenth Amendment.

418.    That by reason of the aforesaid violations, use of force, use of arbitrary, excessive force, seizure of plaintiffs' persons , false arrest and false imprisonment, assault and battery, falsifying evidence, discrimination and malicious prosecution, and conspiracy to commit the above the "defendant officers" violated Jones' rights and privileges as provided to her in the Constitution of the United States of America, and provided to her in the Constitution of the State of New York, and laws thereto, "the officers" and violated 42 U.S.C 1983.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

419. That by reason of the aforesaid, plaintiff Jones was injured in mind and body, still suffers and upon information and belief, will continue to suffer great physical and mental pain.

420. That by reason of the aforesaid violations, use of force, use of arbitrary, excessive force, seizure of plaintiff's person , false arrest and false imprisonment, assault and battery, falsifying evidence, discrimination and malicious prosecution, and conspiracy to commit the above the "defendant officers" violated Williams' rights and privileges as provided to her in the Constitution of the United States of America, and provided to her in the Constitution of the State of New York, and laws thereto, "the officers" violated 42 U.S.C 1983.

421. That by reason of the aforesaid, plaintiff Williams was injured in mind and body, still suffers and upon information and belief, will continue to suffer great physical and mental pain.

422. That by reason of the aforesaid violations, use of force, use of arbitrary, excessive force, seizure of plaintiff's person , false arrest and false imprisonment, assault and battery, falsifying evidence, discrimination and malicious prosecution, and conspiracy to commit the above the "defendant officers" violated Roman's rights and privileges as provided to him in the Constitution of the United States of America, and provided to him in the Constitution of the State of New York, and laws thereto, "the officers" violated 42 U.S.C 1983.

423. That by reason of the aforesaid, plaintiff Roman was injured in mind and body, still suffers and upon information and belief, will continue to suffer great physical and mental pain.

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

424.    That by reason of the aforesaid, Jones has been damaged in a sum of exceeding the jurisdiction of the lower courts, and seeks compensatory damages, plus, punitive damages, costs, attorney's fees, expert fees, as set forth and provided by 42 U.S.C Sections 1983 and 1988, and such other relief as to the court may seem just proper.

425.    That by reason of the aforesaid, Williams has been damaged in a sum of exceeding the jurisdiction of the lower courts, and seeks compensatory damages, plus, punitive damages, costs, attorney's fees, expert fees, as set forth and provided by 42 U.S.C Sections 1983 and 1988, and such other relief as to the court may seem just proper.

426.    That by reason of the aforesaid, Roman has been damaged in a sum of exceeding the jurisdiction of the lower courts, and seeks compensatory damages, plus, punitive damages, costs, attorney's fees, expert fees, as set forth and provided by 42 U.S.C Sections 1983 and 1988, and such other relief as to the court may seem just proper.

### AS AND FOR TWENTY-SECOND THROUGH TWENTY-FOURTH CAUSES OF ACTION FOR MUNICIPAL LIABILITY PURSUANT TO 42 U.S.C. AND 1983 AND MONELL V. DEPARTMENT OF SOCIAL SERVICES, 436 U.S. 658 (1978) FOR DEFENDANTS' VIOLATIONS OF PLAINTIFF JONES, WILLIAMS, AND ROMAN'S RIGHTS UNDER THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AGAINST DEFENDANT CITY OF NEW YORK, DERMOT SHEA, AND TERRENCE MONAHAN AND LEHR

427.    The plaintiffs, repeat, reiterate, and reallege each and every allegation contained in paragraphs marked "1" through "426" with the same force and effect as if more fully and at length set forth herein.

79

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

428. The facts pleaded above describe the policies, practices, and customs or deliberate in difference thereto by defendant City, including, but not limited to: uses of excessive force, and false arrests, and unreasonable restrictions on protestors' First Amendment-protected conduct, often without fair warning: employing crowd control tactics such as pushing, corralling, encircling, or otherwise trapping protestors, without fair warning; the absence of adequately clear standards to guide police officials' extremely broad discretion to arrest anyone at their whim, based on *ad hoc* determinations as to their perceived violations, without fair warning; using flex-cuffs for protest-related arrests, while failing to supply officers with protective padding and adequate numbers of cutting tools to loosen or remove flex-cuffs, while and/or to ensure that such cutting tools are readily available when needed; failing to loosen or remove overtight cuffs; and subjecting arrestees to lengthy detentions and lengthy detentions and arrest processing at centralized arrest processing locations, exposing them to searches, property seizures, and unhealthy and conditions of confinements, in lieu of brief street detentions, and the retention of officers who had previously been accused or found to have engaged in excessive use of force.

429. All of wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to: (a) formal polices, rules, and procedures of Defendant City; (b) actions and decisions by defendant City's policymaking agents including, but not limited to, defendant Shea, and defendant Monahan, and defendant Lehr; (c) customs, practices, and usage of the NYPD that are so widespread and pervasive as

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by defendant City, defendant Shea, defendant Monahan, defendant Lehr, and other policymaking officials; (d) defendant City's deliberate indifference to Plaintiffs' rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by the City's failures, and the failures of the City's policymaking agents, to train, supervise, and discipline NYPD officers, despite full knowledge of the officers' wrongful acts, as described herein.

430.    That as a proximate cause of the City's actions, customs, policies, practices or other widespread deliberate indifference thereto, the plaintiffs were falsely arrested, subjected to excessive force, were imprisoned, excessively detained, injured, physically and emotionally, denied prompt and necessary medical attention and as such they were proximately damaged and were harmed.

431.    Further each plaintiff seeks compensatory damages, legal fees, costs and disbursements.

**AS AND FOR TWENTY FIFTH THROUGH TWENTY SEVENTH CAUSES OF ACTION INCLUDING PUNITIVE DAMAGES AGAINST ALL DEFENDANTS**

432.    The plaintiffs, repeat, reiterate, and reallege each and every allegation contained in paragraphs marked "1" through "431" with the same force and effect as if more fully and at length set forth herein. Defendants intentionally, negligently, and for the purpose of causing severe emotional distress, recklessly conducted themselves towards decedent in a manner so shocking and outrageous that it exceeded all reasonable bounds of decency, wanton disregard, gross negligence, causing him to suffer personal injuries, conscious pain and

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

suffering, loss of enjoyment of life, emotional upset, shock and fright, fear of impending death.

433.   As a result of the foregoing, Plaintiffs were caused to suffer personal injuries, conscious pain and suffering and loss of enjoyment of life and loss of freedom, deprivation of rights, shock and fright and emotional upset that would naturally arise from such an incident, humiliation, mental anguish, injury and inconvenience, expenses incurred and damages to reputation caused by the wanton, reckless and grossly negligent nature of the conduct of the individual police officers, and is entitled to punitive damages; attorney's fees; costs; disbursements; expenses; and interest in this matter from the defendants.

### JURY DEMAND

**Plaintiffs hereby demand a trial by jury on all counts.**

**WHEREFORE**, the plaintiffs demand judgment against the defendants in a sum to be determined by the trial of fact, plus costs, attorney's fees, disbursements, legal and statutory interest and such other relief as to the court seems just and proper on the first through the twenty-fourth causes of action, plus attorney's fees, costs, disbursements and (on the nineteenth through twenty-fourth causes of action), punitive damages on the nineteenth through twenty-first and twenty fifth through twenty-seventh causes of action and such further relief as to the court seems just and proper.

DATED:    New York, New York
          September 1, 2021

Jeffrey L. Jandin, Esq.

82

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM

NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E

RECEIVED NYSCEF: 09/01/2021

Attorney for the Plaintiff
330 West 38th Street suite 302
New York, New York 10018
(212) 265-1350
jemdin@defendalaw.com

83

FILED: BRONX COUNTY CLERK 09/01/2021 02:58 PM
NYSCEF DOC. NO. 1

INDEX NO. 811888/2021E
RECEIVED NYSCEF: 09/01/2021

### ATTORNEY'S VERIFICATION

The undersigned, an attorney admitted to practice in the Courts of the State of New York certifies as follows:

That I am an attorney associated with the Law Office of Jeffrey L. Emdin., the attorney of record for the Plaintiff in the within action; that I have read the foregoing Summons and Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters, I believe them to be true.

The undersigned further states that the reason this Summons and Complaint is made by me and not by the Plaintiff is that the Plaintiff does not reside within the county in which my office is located.

The grounds of my belief as to all matters stated upon my knowledge are my interviews with the Plaintiffs and a reading of the documents in my case file.

The undersigned affirms that the foregoing statements are true, under the penalty of perjury.

Dated: New York, New York
         September 1, 2021

Jeffrey L. Emdin, Esq.

85